## AARON SMITH v. ROBERT WALTER.

| 125 | 453 |
| 202 | [2]181 |

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 5, 1889—Decided April 15, 1889.
[To be reported].

1. In an action for malicious prosecution, absence of probable cause raises a presumption of malice, but the presumption may be rebutted by showing that malice did not in fact exist, and one of the ways of showing this is by showing that the prosecutor acted under the advice of counsel.

2. It is not the advice, however, that rebuts the presumption of malice, but the innocence of the defendant's conduct, of which his seeking advice is merely evidence; and whether the advice is a good defence depends upon the good faith with which it is sought and followed, and this is a question for the jury to determine from the evidence.

(a) The defence in an action for malicious prosecution was, that the defendant before instituting the prosecution made a full and fair disclosure of the facts to counsel, and followed the latter's advice in good faith. In proof of this defence the defendant called the counsel consulted, who testified to what occurred in his interview with the defendant, and that he advised the defendant to prosecute.

3. In such case, it was error to instruct the jury that if they believed the testimony of the witness the plaintiff could not recover, because the

instruction omitted all reference to the truthfulness and completeness of the defendant's statement to his counsel, and the good faith with which counsel's advice was followed, which constituted the real issue and should have been left to the jury to decide.

Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

No. 126 July Term 1888, Sup. Ct.; court below, No. 46 June Term 1885, C. P.

On May 20, 1885, Dr. Aaron Smith issued a summons in trespass on the case for malicious prosecution against Dr. Robert Walter. The plea was not guilty.

At the trial on May 16, 1888, the following facts appeared:

Dr. Smith owned and conducted a sanitarium in Berks county, for some years prior to 1874, and then leased it to Dr. Walter. At the expiration of the lease, Smith refused to renew it and Walter put up buildings for himself in the neighborhood, and conducted a rival establishment. On October 22, 1884, Smith made a complaint before an alderman that Walter was illegally carrying on the practice of medicine, contrary to the act of assembly in such case made and provided. On the same day Walter made complaint before the justice, that Smith, in making the complaint aforesaid, had committed wilful and corrupt perjury, and had a warrant issued upon which Smith was bound over to the Court of Quarter Sessions. The grand jury subsequently ignored the bill of indictment which was brought before them against Smith, and he thereupon brought this suit.

The defence was, that prior to issuing the warrant against the plaintiff, the defendant went to Mr. Cyrus G. Derr, a member of the Berks county bar in good standing, and that after having in good faith laid his case fully before him, Mr. Derr advised him to prosecute the plaintiff.

Upon this subject the plaintiff testified as follows:

Q. He (Smith) arrested you for practicing medicine illegally, did he not? A. Yes, sir.

Q. After that, what did you do? After he had first sued you, then arrested you, what did you then do? A. I went to my lawyer and stated the case to him, and got his advice.

Q. Who was the lawyer? A. Cyrus G. Derr.

Q. That was before you brought the prosecution for perjury? A. Yes, sir.

Q. What did you say to Mr. Derr? A. I called Mr. Derr's attention to the fact that Dr. Smith had had me arrested; that I had been just served with a summons, which considerably disturbed me, and I said I thought his intention was to discredit me before the people and injure me in that way, and I asked him what I should do under the circumstances.

Q. Did you state to Mr. Derr the facts as to the charge against you, as to practicing medicine illegally? A. Yes, sir.

Q. Just state what facts you told him? What did you tell Mr. Derr and what did he say to you? A. After stating to Mr. Derr that I had been arrested for practicing medicine illegally, Mr. Derr asked me if there was any reason why I should be, if it was true that I was practicing medicine illegally, and if there was any reason for the arrest. I told him it was not true that I was practicing medicine illegally, I believed; that I had seen the law and was satisfied myself that I was engaged in a lawful business, perfectly so.

Q. Did you tell him what you were doing? A. I told him what I was doing.

Q. What did you tell him you were doing? A. I told him I had a health institution upon the mountain side, and that I was receiving people who came there to rest, and that I was treating them by hygienic methods, regulating them with hygienic methods; that my institution was a hygienic institution and known as such, and that as such I was conducting it; if there was any medical practice ever conducted in my institution that I had legally qualified physicians in my employ. He asked me upon what grounds did I suppose Dr. Smith had me arrested, and I told him the only thing that I could think of that would leave a ground for this was the fact that the college from which I graduated was in New Jersey at the time I graduated, while it was chartered by the laws of the state of New York. Well, he says, you are not practicing medicine at all, illegally or not, and there is no reason why you should be indicted for practicing medicine illegally, and he says: "I would have him arrested for perjury, and I would have him arrested promptly, and let your answer go out with the charge."

Q. What did you do? A. We consulted about it. I came

down in the 6 o'clock train, and Mr. Derr came to his office about 7 o'clock, and we consulted and talked about it, and he wrote out the information until 9 o'clock in the evening. We consulted about it, and it got along well, about 9 o'clock, and we went over to Alderman Brownwell's. I think Alderman Brownwell came to Mr. Derr's office, I am not certain—I believe I went over to Mr. Brownwell's office, and signed the information. The information was written out, and we made the information. Mr. Derr wrote it out. I do not know what he wrote; he had a book from which he quoted there, a legal form, and he wrote out what he thought was right; and after the alderman had taken my affidavit, and made out the warrant, he gave it to me, and he says, " You had better give that to the constable now." I think I had however got the constable— no, I believe I went then to find the constable to serve it. The reason why we served it that evening particularly is that we had been told that Dr. Smith was going out of town, and if we did not serve it that evening we would not get a chance to. So we sent up the constable that evening to serve the warrant, and the constable reported that Dr. Smith was out of town, and that he had left word at the house for him to come down and enter bail.

Q. That was the day you were arrested? A. That was the same day I was arrested.

Q. You came down to enter bail at six o'clock? A. I entered bail.

Q. When were you arrested? A. I was arrested about between 3 and 4 o'clock in the afternoon of that same day.

Q. When did you enter bail? A. I could not be certain. I came down immediately and consulted my lawyer, but whether I entered bail that evening or not I am not certain.

Mr. Derr testified as follows:

Q. Then he consulted you about this prosecution before it was brought? A. He did.

Q. State to the court and jury how it was brought? A. On a certain evening—I cannot recollect the date, but it is the date named in the information—I presume the information is in evidence—it is on the same day.

Q. October 22, 1884? A. I could not say anything beyond what appears in the information. In the evening, may be half-

past seven o'clock, or thereabouts, Dr. Walter called at my office and called my attention to a prosecution or an information which had been made against him by Dr. Smith. I cannot recollect the date of that, but I presume that that is in evidence, too. After a conference, in which the facts were stated to me —certain facts were stated to me—I gave the Doctor, as my opinion, as a lawyer, that he would be justified in prosecuting Dr. Smith for perjury, and in doing so promptly; and acting under my advice, he made the information. I dictated the information and my clerk drew it up, and he went away with it to the alderman's office.

Q. Do you recollect the facts that Dr. Walter stated? A. I think I could recall the leading facts. I would not undertake to give the entire conversation; and some of the facts I already knew, having been the Doctor's counsel, and having observed a controversy between him and Dr. Smith, I was already possessed of some of the facts. But in the first place, the Doctor told me his method, gave me an idea of his system, of what he was doing at his institution, and he told me, among other things, that he did not administer drugs. After having fully stated to me what he did, I told him it was my opinion that he was not practicing medicine within the intent and meaning of the act of assembly. He also told me he had a diploma from a college the name of which I forget. He told me the college had been chartered by the legislature of the state of New York. I think he said by the legislature. It had been chartered in New York, and at the time that he was graduated at that college it was located in the state of New Jersey. Now, upon those facts, I gave it as my opinion first that he was not practicing medicine, or, if what he was doing should be adjudged practicing medicine, that he was not doing so unlawfully.

Cross-examined:

Q. Those were all the facts he stated to you? A. No, I would not like to say that; indeed, I should not think they were nearly all he stated to me. In addition to that, I might say, that it was manifest to me that what Dr. Smith had sworn to in his information was not true; and the next question I wanted to determine before giving an opinion was as to whether he had knowingly, or at least wantonly, sworn to what appeared to me as not being true. Dr. Smith had known Dr. Walter a

good many years and had known his system, known his method, and, therefore, I concluded that Dr. Smith knew that Dr. Walter was not administering drugs; and I also understood from Dr. Walter that he was a graduate from the same college when it was still located in New York. Therefore I concluded that Dr. Smith knew that Dr. Walter had a diploma, and knew that in his practice he was not administering drugs. Now the next thing to determine was, as to whether he had any motive, and the newspaper article, which was referred to in our conversation—I do not think we had it there, I remembered having read it—was one of the elements taken into consideration—the newspaper article in which Dr. Smith threatened to do Dr. Walter some injury which was not defined. That furnished as I thought the motive. It was indicative of malice, of a purpose to injure Dr. Walter. The article, I believe, wound up with a quotation from Shakespeare.

Q. "Lay on, Macduff"? A. Yes, sir.

Q. What then? A. Upon that state of facts I unhesitatingly advised Dr. Walter that he would be warranted and justified in promptly making an information against Dr. Smith for perjury.

Q. You gave that opinion, not alone upon the statement of facts communicated to you by Dr. Walter, but upon your own view or knowledge of facts previously obtained or obtained from other sources? A. I obtained all my knowledge of the facts from Dr. Walter, excepting, may be, I read the newspaper article; may be I read the newspaper article, but after that newspaper article, the next time Dr. Walter came into my office, I am very certain we spoke of it, because Dr. Walter was in the habit of talking to me about his controversies.

At the close of the testimony, the court, ALBRIGHT, P. J., charged the jury as follows:

In this action brought by Aaron Smith against Robert Walter, the plaintiff seeks to recover damages for alleged malicious prosecution of him by the defendant.

It appears that on October 22, 1884, Walter made information before an alderman that the plaintiff, Smith, had committed wilful and corrupt perjury. Thereupon Smith was arrested, bound over to the Court of Quarter Sessions of this county, a

bill of indictment was laid before the grand jury, and that bill was ignored.

Aaron Smith alleges that that prosecution of him by Robert Walter was malicious and without probable cause ; and for that injury seeks to recover damages.

The law permits a person to institute a prosecution against another for crime. Where a man knows or believes that another has committed a crime, perjury, larceny, or any criminal offence, he has a right to go before a magistrate and make complaint and have the party bound over and tried. This is not only a right of the citizen, but it is a privilege which the law encourages ; because it is to the interest of the public that crime should be punished, and the only way in which crime can be punished is that the offender or supposed offender should be apprehended and put upon trial. Therefore, the law is that if one man causes another to be arrested upon a charge of crime, and that crime is not proved, if the justice discharge the defendant, or if the grand jury ignore the bill, or the petit jury acquit the defendant, it does not follow that the man who was thus discharged or acquitted can turn around and recover damages against his prosecutor. But where the individual who was discharged or found not guilty can prove that the man who prosecuted him, instead of acting from honest motives, and acting prudently, acted maliciously and without probable cause, the law recognizes that a great wrong has been done to the citizen, and the injured party may punish the man who wronged him by bringing an action of this kind against him and recovering damages.

The law recognizing that the average citizen is not learned in the law, has given rise to this rule; that where one man, believing that another has committed a crime, perjury, larceny, or any other fraud which is punishable as crime, is uncertain as to whether he should prosecute or not, and goes to one learned in the law, a lawyer, and lays the case fairly and honestly before him, and the lawyer advises a prosecution, that advice of the lawyer is a shield and defence to the prosecutor, even although the accused party should be acquitted, and even although it should appear that the lawyer's advice was erroneous and wrong. The reason for this rule is this : that it cannot be expected that every man should know the law ; and,

therefore [in order to protect one who intends to prosecute, in a doubtful case, the law recognizes that if he goes to a man who is supposed to be learned in the law, whom the courts recognize as a counsellor at law, and lays the case before him, such conduct is a complete answer to any such alleged malicious prosecution.] [7]

In this case the plaintiff seeks to recover damages against Walter for alleged malicious prosecution. The defendant, Walter, has proved here that before he made the information and had the warrant issued against Smith, he went to Cyrus G. Derr, Esq., who is a member of the bar in this city, and says that he laid his case fairly and fully before him and that Mr. Derr advised him to prosecute Smith and to do it promptly; that Mr. Derr dictated the information, his clerk wrote it, and that thereupon a warrant was issued.

Now, gentlemen, if that is so, if Walter fairly and fully and in good faith submitted his case to Mr. Derr, and Mr. Derr advised the prosecution, that is the end of this case. It is a good defence.

The contention of plaintiff's counsel is that it is for the jury to say whether Walter, when he went to Mr. Derr, stated his case fully, and whether, acting in good faith upon the advice Mr. Derr gave him, he commenced the prosecution, and as to whether there was not the motive of malice actuating him outside of Mr. Derr's influence. This contention is well worthy the consideration of the court. But the court view the matter in this light: that what the circumstances were at the time Walter proposed to prosecute Smith we can know, for they have been disclosed in the trial of this case, and they are part of the plaintiff's case; because a plaintiff bringing an action for malicious prosecution must show that there was want of probable cause and that there was malice. In order to show that there was want of probable cause, he must prove certain facts from which the jury can determine that there was the absence of probable cause. Taking the facts as the plaintiff's case has disclosed them before us in this trial, and then taking the testimony of Walter, who tells us what he stated to Mr. Derr, and taking the testimony of Mr. Derr, in the opinion of the court, it is the court's duty to say whether from this evidence it can be found that Walter did not fairly state his case

Charge of Court below.

to Mr. Derr, and fully state it. And the court is of opinion that the jury could not find that Walter had not fully stated his case to Mr. Derr; and the jury could not find that Mr. Walter had not acted upon the advice of Mr. Derr, when we have the fact here that Mr. Derr dictated the information, and that Walter put his name to it at the direction of Mr. Derr. Therefore I say to you that that contention of plaintiff's counsel cannot be assented to; and it is the duty of the court to say that if the testimony of the defendant, Walter, and of Mr. Derr is believed—if it is believed that what they testify is true, that is, when they testify as to what Walter told Mr. Derr, and that Mr. Derr advised the prosecution—then the jury could not find for the plaintiff, and a verdict of that kind could not stand, for it would be without evidence to support it; and it is the duty of the court to see that a verdict and a judgment is not made which has no evidence to support it.

Dr. Walter testifies what he told Mr. Derr as to what Dr. Smith had done, and he gives you the particulars as to what he stated to Mr. Derr; and that thereupon Mr. Derr advised the prosecution. Mr. Derr testifies upon the same point, and these two witnesses substantially agree on that point. We say to you that if you believe what the defendant, Walter, testifies, or as to what Mr. Derr alone testifies in this reference, then the plaintiff cannot recover.

The credibility of witnesses is always a matter for the jury; at least it is so in this case. The court cannot say to a jury that they must take for true what a certain witness testifies in a matter, however respectable a witness may be. That is the province of the jury. If you or I or any other man testifies in the trial of a case before a jury in court, the jury must say whether you or I or the other man tells the truth; whether they will take for verity what is said under oath. The court cannot do that. Therefore the question of the credibility of the defendant and of Mr. Derr is submitted to the jury.

The defendant has submitted a point to the court to the effect that if you believe that is true which Cyrus G. Derr testifies to—in other words, if you believe him to be a truthful witness—the verdict must be for the defendant. That point the court feel it its duty to affirm, and we shall distinctly affirm that point and affirm it in this instruction.

And, we impress it upon you, gentlemen of the jury, that it is your duty under the view which the court takes to find for the defendant, unless you are prepared to say that what Mr. Derr testifies to is not true.

Mr. Derr testified to a conference, in which the facts were stated to him.   His testimony is as follows : . . . . .

[Now, gentlemen, that is the testimony of Mr. Derr, and the court say to you that, in the light of the circumstances as disclosed by the plaintiff's case in this trial, this was a full and a fair statement of Walter's case, and upon it Mr. Derr advised the prosecution ; and, if you believe that that is true which Mr. Derr testified to on this trial, then you must find for the defendant.] [8]   But if for any good reason you can say that that testimony is not to be credited by you, and that there was not that statement of the case to the lawyer, and the advice to prosecute given, then you will have to proceed and determine whether you will find in favor of the plaintiff or not.   You will then inquire whether the plaintiff has made out his case.

As I have already stated to you, where a man who has been prosecuted for a crime has been discharged or acquitted, and he can show that his prosecutor acted without probable cause and maliciously, he may recover damages.   By the want of probable cause we mean that the prosecutor did not act as a prudent and judicious man, having a proper regard for the rights of others ; that from the circumstances, he had no good reason to believe that the party whom he intended to prosecute committed the wrong.   In this case the charge was that Dr. Smith had committed perjury.   If it is proved that Walter had no good reason to believe that Smith had committed perjury, that from the circumstances a prudent and judicious man would not have had that belief, then you would say that there was no probable cause.

But in order to succeed in an action for malicious prosecution, the plaintiff must show something more than want of probable cause.   He must show, in addition to that, that the prosecution was malicious ; that the man who prosecuted him was actuated by malice, by an intention to do him injury, to do a wrong act, without just cause or excuse.   Now, if you come to consider the branch of the case to which I am alluding, you will inquire whether it is proved that there was no

probable cause for the prosecution, and in the next place whether Walter was influenced by malice. That malice you can find from circumstances; you can find it from the very fact that there was no probable cause if the circumstances are satisfactory. If you come to consider the case in this aspect, that is, I mean, if you do not find for the defendant on the ground that Mr. Derr's testimony is true, but determining that Mr. Derr's testimony must be rejected, and you conclude to investigate the plaintiff's case, then you will consider all the circumstances. I shall not refer to them at great length. They have been divulged by the testimony and statements of counsel in the opening of the case.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

So, gentlemen, you will take the case. You will inquire whether the plaintiff has satisfied you that the prosecution of him by the defendant here was without probable cause and was malicious; because the prosecution having ended in the criminal court by the discharge of the plaintiff, if want of probable cause and malice is made out, [the plaintiff is entitled to recover, unless you find that what Mr. Derr testified to is true. If you believe that that is true, the court say to you, in view of the circumstances as we have them developed here, and under the testimony which Mr. Derr has given, that this advice to prosecute is a complete shield and defence to the defendant here] [9] and that the jury could not find, under this evidence, that Walter had not fully and fairly stated his case to his counsel, and could not find that he had not prosecuted upon the strength of what his counsel had told him.

I repeat, because both plaintiff and defendant are entitled to a positive and distinct ruling by the court; I repeat that, if what Mr. Derr has testified to is believed by you, it is your duty to find for the defendant; and if, for any reason that is satisfactory to you, that is not believed, and you are prepared to reject that testimony as unproved, then you will inquire whether the plaintiff has made out his case. If he has not, you will also find for the defendant. If you find that he has made out his case and Mr. Derr's testimony is rejected, you will find for the plaintiff.

The court give this positive instruction as to the effect of the advice of counsel, because, undoubtedly, it is the well-

settled law. The court of last resort in this state has said that "professors of the law are the proper advisers to men in doubtful circumstances, and their advice, when fairly obtained, exempts a party who acts upon it from the implication of proceeding maliciously and without probable cause. It may be erroneous, but the client is not responsible for the error. He is not the insurer of his lawyer. Whether the facts amount to probable cause is the very question submitted to counsel in such cases, and when the client is instructed that they do, he has taken all the precautions demanded of a good citizen." Again, it is said, "when a prosecutor fully and fairly submits to his counsel, learned in the law, all the facts which he knows are capable of proof, and is advised that they are sufficient to sustain a prosecution, he is not liable to an action for malicious prosecution when, acting in good faith on that information, he institutes the prosecution, although the opinion be erroneous."

Parties have presented points which the court will proceed to answer.

The plaintiff requests the court to charge [inter alia] :

2. That the finding of the grand jury that the indictment presented in pursuance of the said complaint of the said Robert Walter was not a true bill, cast the burden of showing probable cause for the making of said complaint on the said Robert Walter, the defendant here ; and, consequently, that there was malice until it be disproved.

Answer: Negatived.[2]

3. That if the jury believe that Robert Walter, the defendant here, knew or might have learned by inquiring that the institution, known by the name and style of Hygeo-Therapeutic College, N. J., which issued a diploma to him, was not a legally chartered college or institution ; or, if he knew, or might have learned by inquiring, that Aaron Smith, the plaintiff here, believed and had publicly declared that it was not a legally chartered college or institution, then there was no probable cause for the said Robert Walter to believe or charge that the said Aaron Smith, in making oath to his belief, had committed wilful and corrupt perjury.

Answer : Negatived, whether Walter practiced medicine enters into the question of probable cause as here presented.[3]

4. That whilst a party, acting under the advice of counsel,

Charge of Court below.

may, in some cases, be relieved from the effect or injury result-
ing from his acts, that can only be where there has been a bona
fide and honest revelation of all the facts to counsel, without
evasion, suppression or falsehood, but with a sincere and honest
purpose to procure the benefit of legal advice upon a truthful
statement of the facts for his guidance ; and if the jury in this
case believe that Robert Walter, the defendant here, in procur-
ing the advice of counsel as to the prosecution of Aaron Smith,
the defendant here, for perjury, withheld or falsely stated any
material or important fact, then the advice of his counsel is of
no avail, and will not protect him from the consequences of
his act in making the complaint of wilful and corrupt perjury.

Answer : Negatived, for the reasons stated in the general
charge. If the testimony of Mr. Derr is credited, the defend-
ant stated his case fully to his counsel.[4]

6. The question of good faith in which a defendant applies
to counsel for advice, is for the jury, and may be determined
by the language or conduct of the defendant immediately be-
fore and after the consultation.

Answer : If the jury credit the testimony of the defendant
and of Cyrus G. Derr, Esq., then Mr. Derr advised the prose-
cution, and his advice to prosecute is an answer to plaintiff's
case. The jury could not find that the defendant had not
acted in good faith. In view of the facts in this case, the
point is negatived.[5]

8. Whilst the advice of counsel, solicited and followed in
good faith, will rebut the presumption of malice arising from
want of probable cause, it will not rebut the fact of malice
proved, and the proof of such fact is to be determined by the
jury.

Answer : The advice of Cyrus G. Derr, Esq., to prosecute is
a valid defence. If the jury find that he advised the prosecu-
tion, as he and the defendant testified that he, Derr, did, plaint-
iff cannot recover under the facts in this case; the point is
negatived.[6]

The defendant requests the court to charge [inter alia] :

7. From all the evidence in this case it appears that Robert
Walter did, before commencing the prosecution against Aaron
Smith for perjury, submit all the material facts to Cyrus G.
Derr, Esq., a lawyer learned in the law, and that Mr. Derr did

advise him, he had good grounds in law upon the facts so stated to commence a prosecution for perjury against Aaron Smith; and, if the jury believe the testimony of Cyrus G. Derr, Esq., the verdict should be for the defendant, Robert Walter.

Answer: If the jury find that Mr. Derr advised the prosecution, as he and the defendant testified that Mr. Derr did, the verdict should be for the defendant. Thus explained the point is affirmed.[1]

The verdict of the jury was in favor of the defendant. Judgment having been entered, the plaintiff took this writ, assigning for error:

1. The answer to defendant's seventh point.[1]

2-6. The answers to plaintiff's points.[2 to 6]

7-9. The parts of the general charge in [ ] [7 to 9]

*Mr. Richmond L. Jones* (with him *Mr. W. H. Livingood* and *Mr. George J. Gross, Jr.*, for the plaintiff in error:

It was never intended that a man with malice in his heart and intent to do one an injury, should cover his offence and escape its consequences through concurrence of counsel in his views or opinions. His good faith and honest purpose are the criterions; and of those the jury must judge, if called in question, as well as of his credibility, by his conduct, his manner and by all the facts and circumstances of the case: Addison on Torts, § 855; Glascock v. Bridges, 15 La. Ann. 672; Davenport v. Lynch, 6 Jones Law, N. C., 545; 4 Wait's Act. and Def. 355; Emerson v. Cochran, 111 Pa. 619.

*Mr. H. Willis Bland*, for the defendant in error:

1. "Malice, either express or implied, and want of probable cause must both concur," to entitle a plaintiff to recover in an action for malicious prosecution: Farmer v. Darling, 4 Burr. 1974. Advice of one learned in the law, that a crime has been committed, acted upon in good faith by a prosecutor, furnishes probable cause and rebuts the inference of malice, resulting from the want of probable cause: Walter v. Sample, 25 Pa. 277; Fisher v. Forrester, 33 Pa. 501; Kirkpatrick v. Kirkpatrick, 39 Pa. 292; Dietz v. Langfitt, 63 Pa. 234; Bernar v. Dunlap, 94 Pa. 329; McCarthy v. De Armit, 99 Pa. 63; Sut-

ton v. Anderson, 103 Pa. 151. There was no evidence to submit to the jury from which to find that Robert Walker did not in perfect good faith obtain and act upon Mr. Derr's opinion; and for that reason it would have been error in the court below to submit that question to the jury: Fisher v. Forrester, 32 Pa. 507; Bernar v. Dunlap, 94 Pa. 331.

2. In Battles v. Laudenslager, 84 Pa. 452, Mr. Justice STERRETT states the rule of law relative to the submission of facts to the jury as follows: "If there is no sufficient evidence to justify an inference of the disputed fact, the court has the right and it is its duty to withhold it from the jury. Evidence may be legally admissible as tending to prove a particular fact which yet by itself is utterly insufficient for the purpose. It may be a link in a chain, but it cannot make a chain unless other links are added: Howard Express Co. v. Wile, 64 Pa. 201. So in England it is now settled that the preliminary question of law for the court is, not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence on which the jury can properly find the question for the party on whom the onus of proof lies, it should be submitted; if not, it should be withdrawn from the jury: Ryder v. Wombell, L. R. 4 Exch. 39; Jewell v. Parr, 13 C. B. 916."

OPINION, MR. JUSTICE MITCHELL:

It is to be regretted that this long personal controversy should be further protracted, but an error, unfortunately pervading the whole charge, compels a reversal of the judgment.

The learned judge instructed the jury: "The defendant has submitted a point to the court to the effect that if you believe that is true which Cyrus G. Derr testifies to—in other words, if you believe him to be a truthful witness—the verdict must be for the defendant. That point the court feels it their duty to affirm, and we shall distinctly affirm that point, and affirm it in this instruction. And we impress it upon you, gentlemen of the jury, that it is your duty, under the view which the court takes, to find for the defendant, unless you are prepared to say that what Mr. Derr testifies to is not true." The same error appears in the answers to several of the points, but this is the most conspicuous illustration of it.

This was an incomplete, and therefore incorrect, presentation of the law. It gave the jury an irrelevant and misleading issue upon which to find their verdict, and it trespassed upon the jury's province in regard to the real defence.

It was an incorrect statement of the law, because it omitted all reference to the truthfulness and completeness of the defendant's statement to his counsel. Every word of Mr. Derr's testimony could be absolutely true, and yet the statement made to him by his client might be so incomplete, so lacking in some essential fact, so uncandid, or colored by malice or prejudice, as to be no defence at all. The law was accurately stated by the defendant's counsel themselves, in their fourth point: "When . . . . . the prosecutor goes to a lawyer, and states all the facts to him in good faith, and he is advised by the lawyer that he has good grounds in law for making the criminal charge, and following the advice of the lawyer he in good faith commences the criminal prosecution, he is not liable in an action for malicious prosecution." This point the learned judge properly affirmed, but in his charge he unfortunately omitted to add the necessary qualifications in regard to the client's statement, upon which the counsel's advice was founded.

The instruction quoted, also gave the jury a false issue. As already shown the entire truthfulness of Mr. Derr's evidence was not inconsistent with his client's liability, and as Mr. Derr was probably known to every juror in the box, as a prominent member of the bar, whose veracity no one would think of questioning, the direction to decide their verdict on their belief in his truthfulness as a witness, gave the plaintiff no chance at all on the real issue in the case.

The real issue was whether the defendant had made a fair and full statement of the facts to his counsel, and then in good faith followed his advice. This cardinal fact the court took away from the jury, by assuming that the statement as testified to by Derr and his client, was sufficient in law, and leaving only to the jury the fact that it had been made. This was an encroachment on the province of the jury.

It is sometimes said that the advice of counsel furnishes probable cause for the prosecution, but this is not an accurate statement of the law. Absence of probable cause raises a presumption of malice, but the presumption may be rebutted by

showing that malice did not in fact exist, and one of the ways of showing that fact is by showing the advice of counsel. It is not however the advice that rebuts the presumption of malice, but the innocence of the defendant's conduct, of which his seeking advice is merely evidence. Whether the advice makes out a good defence or not, depends on the good faith with which it is sought and followed. Such good faith is shown by the candor, fullness, and fairness of the client's statement, upon which the advice was based, and its adequacy in those respects, whenever it is disputed, is for the jury to determine upon all the evidence.

The evidence in the present case appears to have been so entirely satisfactory to the court, that they deemed it conclusive as a matter of law, and intentionally took the consideration of it away from the jury. Were it not for this, we might pass over the errors complained of, as mere inadvertent slips of expression, which did no harm, inasmuch as the law was fully and accurately stated, not only in the affirmance of defendant's fourth point, but in other parts of the charge.

But the plain intent to take that question from the jury, and the unfortunate emphasis with which it was done, by resting the entire case on the unchallenged truthfulness of Derr's testimony, make the error too material to be disregarded. The plaintiff having made out a complete prima facie case, was entitled to have the jury pass upon it, and the defence, as a whole. The court might properly intimate their opinion to the jury, to aid, not to control the verdict, or might set the verdict aside if against the weight of the evidence, but it could not determine the substantial issue in the case as a matter of law, and this was what in effect was done.

Judgment reversed, and venire de novo awarded.