## Stonor v. Rawalski, Appellant.

*Malicious prosecution—Probable cause—Malice—Case for jury.*

Where an owner of a store building and a stock of goods rents the building to a woman and sells her the stock by bill of sale, and the tenant thereafter removes from the premises with the goods, and rent accrues which she does not pay, and the landlord has her arrested for larceny in stealing the goods, but she is discharged by the magistrate on her producing the bill of sale, and subsequently the landlord causes her arrest a second time, and she is acquitted by a jury, and it appears that the prosecutor had declared that he "intended to put her in prison before he was through with her," a verdict and judgment for $1,000 will be sustained against him in an action by the woman for malicious prosecution.

Argued Nov. 1, 1916. Appeal, No. 172, Oct. T., 1916, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Dec. T., 1913, No. 993, on verdict for plaintiff in case of Mary A. Stonor v. Frank Rawalski. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass for malicious prosecution.

PATTERSON, J., charged in part as follows:

This is a suit for damages brought by the plaintiff, Mary A. Stonor, against the defendant, Frank Rawalski, for an alleged malicious prosecution.

Malicious prosecution, so far as this present case is concerned, may be defined to be an action for the recovery of damages to person, property, or reputation, resulting from a previous criminal proceeding, which was commenced and continued in by the present defendant, with-

out probable cause, but with malice, and which has terminated in favor of the present plaintiff.

In the present proceeding it is admitted that on June 26, 1913, the defendant, Frank Rawalski, appeared before Magistrate Call and charged the plaintiff with larceny, whereupon a warrant was issued, and the plaintiff was arrested, and taken before the magistrate for a hearing, and after the hearing the plaintiff was discharged; that after the plaintiff was discharged the defendant then went before another magistrate, William F. Beaton, Esq., and charged the plaintiff with malicious mischief and larceny, whereupon another warrant was issued for the arrest of Mary A. Stonor; that subsequently she was arrested, and, after a hearing, was committed to Moyamensing prison, where she was detained for about five hours, when bail was entered for her appearance in court.

It is also admitted that she was subsequently indicted, and was tried and acquitted before a court and jury in one of our criminal courts......

Mary A Stonor, the plaintiff, testified that she had rented premises 2333 Germantown avenue, from the defendant, Frank Rawalski, for the purpose of conducting a candy and ice cream store; that she paid the defendant the sum of eight hundred dollars for the stock and fixtures and goodwill; that the defendant had told her he had done a business of forty dollars a day, and that she, the plaintiff, did not do more than forty dollars in two weeks.

That on the 24th and 25th of June, 1913, before the term of her lease upon the premises had expired, she removed from 2333 Germantown avenue. She testified that she took with her only the things that had been covered in the bill of sale, which belonged to her. That she was arrested on a warrant sworn out by the defendant, and appeared before Magistrate Call, who discharged her. That on the 30th of June she was again arrested on a warrant sworn out by the defendant before Magistrate

Beaton, and held under four hundred dollars bail. Before bail could be secured, she was taken to the City Hall, and from there to Moyamensing prison, where she was confined until nine o'clock the same evening. She had never been arrested before, and she had never had any trouble before.

Lillie Votta, the daughter of the plaintiff, testified that she had been with her mother all the time, and knew about the eight hundred dollar transaction with the defendant. That nothing was taken from 2333 Germantown avenue except what was covered by the bill of sale, and that some of the things belonging to the plaintiff are still in the Germantown avenue premises. That the plaintiff was discharged at the first hearing before Magistrate Call, but that Magistrate Beaton, on the second arrest, held the plaintiff under four hundred dollars bail, which was procured by this witness.

She also testified that she was the last one in the house, and when she left she did not see anything that was wrong. After locking up the house, on her way home, she met Mr. Rawalski, who asked for the key. This was on the 25th, it having taken two days to complete the moving. The witness handed Mr. Rawalski the key.

Benjamin T. Pfeipfer was called on behalf of the plaintiff, and testified that at the time of this occurrence he lived at 2331 Germantown avenue. That a day or two after Mrs. Stonor moved, the defendant came in this witness's store, and asked if he had any goods that belonged to Mrs. Stonor, and Mr. Pfeipfer replied that he had not. Then the defendant forbade the witness to either buy or receive anything, and before he got through the defendant became very boisterous, and said that this woman was a thief, she was worse than a thief, and he, the defendant, intended to put her in prison before he was done with it.

That, substantially was the plaintiff's testimony.

The defendant appeared upon the stand, and called a number of witnesses.

28, (1917).]          Charge of Court below.

Frank Rawalski testified that he was the defendant in this case, that it was late on the 24th of June, 1913, when he learned that Mrs. Stonor had moved. That the next day he went to the house. He found the door of 2333 Germantown avenue closed. He inquired of the neighbors where the plaintiff had moved, and they did not know. He then saw the plaintiff's daughter on the street, and went to her, and asked her for the key, which was given him. The defendant was told by Mr. Govsky, a neighbor, that the plaintiff's property had been moved in a lot of brewery wagons, or beer wagons, and two big vans. The defendant was also told by Mrs. Dolman, a neighbor, that she had gone into the store 2333, while Mrs. Stonor was moving, and that she (Mrs. Dolman), had said to Mrs. Stonor, "You didn't buy that big looking glass?" And that Mrs. Stonor replied, "I know, but I take it anyhow."

The defendant testified further that a large mirror, some smaller mirrors in the bulk window, a partition, some lead pipe and screen doors were taken, which were not included in the bill of sale, and that damage was done to the plaster. He also testified that he issued a warrant for the plaintiff's arrest before Magistrate Call, and at the hearing the plaintiff in this case was discharged. The defendant then consulted Elias H. White, Esq., a member of the bar, and upon his advice there was issued for Mrs. Stonor another warrant before Magistrate Beaton, and Mrs. Stonor was held under four hundred dollars bail on the charge of larceny and malicious mischief. At the trial before a jury, Mrs. Stonor was found not guilty, on both charges.

Annie Dolman, called on behalf of defendant, testified that she had gone in Mrs. Stonor's store, when Mrs. Stonor was moving, and that Mrs. Dolman asked Mrs. Stonor if she was going to take the large glass, and that Mrs. Stonor replied that she had not bought the glass, but she was going to move it.

Then Mr. White was called by the defendant, and testi-

fied that after having heard Mr. Rawalski's story, and having seen the store, he advised the defendant to swear out a warrant for the plaintiff on the ground of larceny and malicious mischief.

Verdict for plaintiff for $1,750, on which judgment was entered for $1,000, all above that amount having been remitted. Defendant appealed.

*Errors assigned* were various instructions.

*Wm. O. Armstrong,* for appellant.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for appellee.

OPINION BY ORLADY, P. J., March 13, 1917:

The plaintiff recovered a verdict against the defendant in an action for malicious prosecution, and after a motion for judgment n. o. v. was overruled, this appeal by the defendant is brought for our review.

The facts in the case were carefully presented by the trial judge, and the verdict returned is fully warranted by the testimony. The contention of the defendant is that, under all the evidence the verdict should have been directed for the defendant.

In an action for malicious prosecution, if the facts connected with the prosecution are admitted, or are so clearly established as not to be open to dispute, the question of probable cause is for the court: Gow v. Adams Ex. Co., 61 Pa. Superior Ct. 115; Kuhns v. Ward-Mackey Co., 55 Pa. Superior Ct. 164. The gist of false imprisonment is unlawful detention, and the general rule is that malice will be inferred from the want of probable cause, so far at least as to sustain the action. When a party secures civil or criminal process to interfere with the liberty or property of another, maliciously and without reasonable or probable cause, he must answer in damages for his malice or mistake in his remedy;

Mihalyik v. Klein, 22 Pa. Superior Ct. 193. Nothing is better settled by our decisions than that, where one commences a criminal prosecution for the purpose of compelling his debtor to pay a just debt, it is prima facie evidence of want of probable cause and of malice, and shifts the burden of showing it is not so on the defendant: McDonald v. Schroeder, 214 Pa. 411; Squires v. Job, 50 Pa. Superior Ct. 289.

It is equally true that, where a defendant in an action for malicious prosecution shows probable cause, his motives in instituting the prosecution are of no consequence, become immaterial and cannot be taken into consideration by court or jury. If there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable: McCoy v. Kalbach, 242 Pa. 123; Tufshinsky v. Pittsburgh, Etc., Ry. Co., 61 Pa. Superior Ct. 121.

The question is not whether the person charged with a crime was guilty, but what were the indications of his guilt. The test is, the belief of the prosecution in the existence of probable cause, based on reasonable grounds. The question does not depend upon the actual state of facts in the case, but upon the honest and reasonable belief of the prosecutor that there is a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused party is guilty of the offense: Coyle v. Snellenburg, 30 Pa. Superior Ct. 246. In order to make the advice of counsel available by way of defense, it must be shown that the party gave to his counsel a full and fair statement of the facts within his knowledge, or which he had reasonable grounds to believe he could prove, that he used reasonable diligence to ascertain the facts, and that he acted in good faith upon the advice received. Evidence of this character is admissible to rebut the charge of malice, but its relevancy is to establish a fact, not to produce a conclusion of law. Whether or not the defense is established is a question of fact to be found

by the jury from all the facts and circumstances taken in connection with such advice: Humphreys v. Mead, 23 Pa. Superior Ct. 415.

The defendant in this case was not misinformed of any material fact.    He had made the sale of the fixtures to the plaintiff, and knew the items passing by his bill of sale.    He knew, after personal inspection of his premises just what property she removed, and when he charged her with larceny of the goods she had paid for, and declared that he "intended to put her in prison before he was through with her" he disclosed a state of mind that could only be interpreted by the jury as malicious.

Having taken her before a magistrate of his own selection, without an opportunity for her to secure counsel, when on exhibition of his bill of sale she was discharged, he persisted in having her again arrested on the same charge, and held to bail and trial, from which she was again discharged, the jury were warranted in concluding that there was no other meaning, than that he well knew there was no probable cause for charging her with either larceny or malicious mischief, and that under the facts of the case the court was justified in affirming the plaintiff's first point "that no one is justified in using the criminal law for the purpose of collecting debts" with the explanation that was given therewith, and "that if the defendant pursued the plaintiff simply for the purpose of maliciously harassing and injuring her, then the jury may give punitive damages for the purpose of punishing the defendant for his malicious conduct."

No reasonable explanation was given to the jury for the defendant's conduct, and the verdict rendered was fully warranted under the facts as developed.

The judgment is affirmed.