IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## MIDDLE DISTRICT—HARRISBURG 1865.

---

## Smith *versus* Ege.

1. Where one accused of crime has been discharged by the examining magistrate, the burden of showing probable cause is thrown on the prosecutor in an action against him for malicious prosecution.

2. Probable cause does not depend on the actual state of the case, but upon the honest and reasonable, belief of the party prosecuting.

3. Probable cause is a reasonable ground for belief of guilt, without regard to what induces the belief if it be reasonably sufficient.

4. Floating rumours are not an adequate foundation for such belief, but representations of others, especially of those who have had opportunities for knowledge, or who have made an investigation, are.

5. A murder having been committed, the defendant employed detectives, who discovered facts, tending to show the guilt of the family of which the accused was one; the facts were reported to the defendant and his counsel, who advised a prosecution. *Held*, that he had reasonable ground for belief, and that probable cause had been shown.

6. There is always a presumption in favour of the decisions of the courts below. The plaintiff in error therefore must furnish to the Supreme Court the means of determining with certainty, and in such a case as an action for malicious prosecution, the whole evidence duly certified must be given.

ERROR to the Court of Common Pleas of *Cumberland county*.

This was an action, commenced February 25th 1862, by William Smith against Peter F. Ege, for maliciously charging him with a felony, and causing him to be imprisoned and kept in prison for seven days, when on hearing he was discharged from custody by the justice, he having found " no probable cause."

In January, 1862, an old man and a boy living with him in a cabin were murdered, and the cabin was burned. The old man had

[Smith *v.* Ege.]

formerly worked for Ege, and was well known to him.  Ege employed detectives, who visited the vicinity of the crime, and after investigation, reported to him and his counsel that the impression in the neighbourhood was that the " Smith family" had done it; that all they heard pointed to the Smith family; that a girl had said one of the Smith boys told her she could make $100, the reward offered, for he had committed the murder.  This was the substance of the evidence found in the paper-book.

The 4th point of the plaintiff was: " If the jury believe that up to the institution of this prosecution, the plaintiff sustained the reputation of a quiet, peaceable, inoffensive old man, and that that fact was known to the defendant when he instituted the prosecution, and the further fact, of the *alibi* proven by Brechbill, this knowledge, added to the discharge of the plaintiff from custody by the justice of the peace, on the hearing of the case, for the reason assigned by him in that discharge, that ' he found no probable cause for the detention,' is *primâ facie* evidence of want of probable cause sufficient to throw the burden of proving probable cause upon the defendant."

The court (Graham, P. J.) charged:—" In January 1862, a most foul murder and arson were committed.  The victims were an old man named Berger and a coloured boy who lived with him in a cabin, near the mountain.  The old man was found murdered near his own house, the house on fire, and the body of the coloured boy in the flames, bearing marks of violence.  The old man Berger formerly worked for Mr. Ege, at his iron works, and was well known to him.  Mr. Ege employed two police officers of this town to endeavour to ferret out the murderers.  Major McCartney and Mr. Martin, the officers employed by Mr. Ege, went out to the vicinity of the murder several times, and reported from time to time the result of their inquiries and investigations.  It appears that the officers were informed by a number of the neighbours that suspicion rested upon the Smith family, and further that one of the Smiths acknowledged his guilt, and a knife, said to belong to Berger, was found in the cabin of the young Smiths.  Upon this information being communicated to Mr. Ege, he made an information before Justice Sponsler upon which a warrant issued, and the plaintiff and his sons were arrested and committed to jail, but upon a further hearing before the justice, they were discharged.

" Upon this evidence the question is presented whether the prosecution instituted by the defendant was malicious and without probable cause.  What amounts to probable cause is a question of law for the court, but whether it has been proved is a fact for the jury.  If the jury believe the facts detailed by the officers, as proved by them, were communicated to the defendant and he acted in good faith, under a belief of the guilt of the plaintiff and

[Smith v. Ege.]

his sons, you ought to find for the defendant. So far from defendant's conduct being censurable, it appears to us praiseworthy and commendable in endeavouring to discover the murderers of this friendless old man.

" We answer all the points presented by the plaintiff's counsel in the affirmative, except the 4th, which we answer in the negative. We are of opinion, if the evidence is believed, that the defendant has shown probable cause."

There was a verdict for the defendant, and the charge was assigned for error.

*W. J. Shearer*, for plaintiff in error, cited Seibert v. Price, 5 W. & S. 439; Beech v. Wheeler, 6. Casey 72; Travis v. Smith, 1 Barr. 234; Holborn v. Neal, 4 Dana 121.

*Hepburn, Smith* and *Miller*, for defendant in error.

The opinion of the court was delivered, May 24th 1866, by

STRONG, J.—Though there are four assignments of error, they present but one question. It is whether, if the evidence submitted to the jury was believed, probable cause for the prosecution against the plaintiff had been shown. As he had been discharged by the examining magistrate, the burden of showing affirmatively that there was probable cause rested upon the defendant, and the Court of Common Pleas was of opinion that he had given sufficient evidence to establish it. There is always a presumption in favour of the correctness of the decisions made by Courts of Common Pleas, and hence, he who complains of error, must give to us the means of determining with certainty that error has been committed. We cannot know whether probable cause for a criminal prosecution has been shown, unless we are accurately informed what evidence was given. It was therefore incumbent upon the plaintiff in error to spread before us the whole evidence duly certified, or as agreed upon by the attorneys of both parties. Without this, we can in no such case as the present, conclude there was a mistake in affirming that the defendant had probable cause for instituting the prosecution. We have now no such exhibition of the proofs, and the parties are not agreed respecting it. But looking to so much as is presented by the paper-book, we think the court was not in error.

Probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting. It has been variously defined as such a suspicion as would induce a reasonable man to commence a prosecution, Cabanes v. Martin, 5 Dev. 454; or a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the offence,

Munns *v.* Dupont, 3 Wash. C. C. 31; or as in our own cases, a deceptive appearance of guilt arising from facts and circumstances misapprehended, or misunderstood, so far as to produce belief: Seibert *v.* Price, 5 W. & S. 439, and Beach *v.* Wheeler, 6 Casey 72. The substance of all these definitions is a reasonable ground for belief of guilt. It can make no difference what induces the belief, if it be reasonably sufficient. While mere floating rumours are not an adequate foundation for it, plainly representations of others may be, and especially representations made by those who have had opportunities for knowledge, or who have made an investigation. While on the one hand, individuals are to be protected against rash, wanton and causeless prosecutions, the public interests demand that courts shall not frown upon honest efforts to bring the guilty to justice.

In the case before us, it appears that the defendant acted upon the representations and recommendation of detective public officers. An atrocious crime had been secretly committed. It was the right and duty of every citizen to endeavour to bring the offenders to justice. The defendant employed two police officers to ferret out the criminals. It does not appear that he directed the attention of the officers to the plaintiff, or that he had any ill-will against him. The officers went to the neighbourhood where the crime had been committed, and made repeated investigations. They discovered some facts tending strongly to show the guilt of the " Smith family," of which the plaintiff was one. The results of their investigation they reported to the defendant, and to his legal counsel. They reported the facts of which they had been informed, and those they had discovered, and told him all pointed to the Smith family. The counsel of the defendant, also in view of the report of the police officers, recommended that a prosecution be commenced. It was, therefore, not on his own suspicions, nor on flying rumours, but on the representations of experienced detectives, who had made an investigation, and in accordance with the opinion of counsel who had heard those representations, that the defendant acted. Though he may have been mistaken, these representations furnished a reasonable ground for belief. And the court below was therefore not in error, either in admitting proof of them, or in instructing the jury that probable cause for the prosecution had been shown.

The judgment is affirmed.

AGNEW, J., was not present at the argument of this case.