## Gow, Appellant, *v.* Adams Express Company.

*Malicious prosecution—Probable cause—Evidence—Case for the court.*

In an action for malicious prosecution, if the facts connected with the prosecution are admitted, or are so clearly established as not to be open to dispute, the question of probable cause is for the court.

Argued April 13, 1915.   Appeal, No. 75, April T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., Oct. T., 1912, No. 1367, for defendant n. o. v. in case of George A. Gow v. Adams Express Company.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass for malicious prosecution.

At the trial the jury returned a verdict for the plaintiff for $1,000.

On a motion for a new trial and for judgment n. o. v. HAYMAKER, J., filed the following opinion:

This was an action of trespass to recover damages for an alleged malicious prosecution, in which plaintiff obtained a verdict of one thousand dollars.

On February 21, 1912, H. L. Kirk, an agent of the defendant company, charged the plaintiff and one Howard Parrish, before a magistrate, with the crime of larceny, in stealing from the company, on January 30, 1912, six diamonds valued at $940.00.   The plaintiff was arrested at Carey, Indiana, on March 2, 1912, and Parrish at the same time in the City of Pittsburgh.   Both defendants waived a hearing before the magistrate, and were jointly indicted on April 29, 1912.   When they were called for trial on May 15, 1912, Parrish entered a plea nolle contendere, and on motion of the district attorney, with the consent of the court, a nolle prosequi was entered as to Gow, who had been confined in the jail for seventy-six

days.  In disposing of the motion for judgment non obtante veredicto we will consider only such facts as were either admitted or established by uncontradicted evidence, and determined from these alone whether we should have affirmed defendant's point that "under all the evidence the verdict must be for the defendant," on the ground that those facts did or did not establish probable cause for the making of an information against the plaintiff for the crime of larceny.

Some one at Sharpsville, in Lawrence County, Penna., expressed through the defendant company six diamonds valued at $940.00, to Mr. Sam. F. Sipe, an importer of diamonds at Pittsburgh.  That consignment was due at the union station in this city, on January 30, 1912, at 12 : 25 p. m. and was receipted for at that time by someone in the employ of the company.   The loss of the package containing the diamonds was discovered on the afternoon of that day.  Detectives were employed, who worked on the case for nearly two weeks without success. About February 10, 1912, there was a newspaper publication of the theft, and three days later a package was delivered to and received by the company from the United States mail, containing five of the diamonds in question, one of which was set in a ring and another in a stick pin.  The detective visited various jewelers in the hope of discovering the one that had made the settings, and found that Heeron Brothers had mounted one of the diamonds in the ring, and the stick pin had been mounted by Hardy & Hayes, and that the two diamonds had been left with them for that purpose by Parrish, who gave his right name to the two different jewelers when he left them to be mounted, and in a few days thereafter Parrish called at the jewelers and received the property.   The mounted and unmounted diamonds were taken to Sipe, the consignee, who identified them as his property.   At the time of the theft, and for a few months prior thereto, the plaintiff was in the employ of the defendant as a sheet writer at the defendant's

place of business in the union station.  He left the company the day following the theft, but had notified the defendant company a few days before that he intended to do so.  After leaving the company the plaintiff went to Connellsville for some three weeks, then to Chicago, and from there to Gary, Indiana, arriving at the last place about February 21, 1912.  Parrish at the time of the theft, and for some time before, was a "wagon man" and delivered packages for the company.  Both Gow and Parrish could have access to the room from which the diamonds were stolen.  Following the larceny the defendant's agent interviewed all the employees about the place and endeavored in every way, personally and through detectives, to discover the real perpetrator.

When it was discovered that Parrish was in possession of the stolen property he was interviewed by Kirk and Slater, agents of the company, and by the detectives employed, on the 21st day of February, 1912, and to them he stated that about 1:15 on the 30th or 31st of January the plaintiff, Gow, approached him at the union station and said that he was speculating in diamonds and had five nice ones, which he then displayed and offered to sell for $125.00, that he then told Gow that he had only $96.00, and that it was then arranged between them to meet that evening at six o'clock to close the deal; that when he finished his work on that evening he met Gow, paid him $96.00 and received the five diamonds; that he took the diamonds to the jewelers, giving their names, and stated just what he had them do with two of the diamonds; that he, Parrish, had kept his money at home under the carpet; that when he read in the newspapers on the 10th of February, 1912, about the Sipe larceny from the express company this was the first intimation he had that the diamonds had probably been stolen; that he had worried a great deal about the matter, and the next day had explained the whole situation to his mother; that he intended to take the diamonds back to the company, but that his mother advised against

it, saying that he would be blamed for stealing them, and she suggested his leaving them with her so that she could send them to the company, upon which the matter would likely be dropped by the company, and that he was later informed by his mother that she had so sent them to the company.  Before the information was made Parrish not only related the foregoing facts to the informant, but to others and by them repeated to them.  In addition to this oral statement, and before the information was made, Parrish also signed and was sworn to a type-written statement in which he set forth all the facts that we have related.  Before making the charge an effort was made to interview the wife and mother of Parrish, but the former could not be seen, and the mother in part confirmed the story of Parrish.

After the arrest of the plaintiff he was brought to the city, and he and Parrish were brought together in a private office, and again at the office of the magistrate. Parrish then and there, and on both occasions, charged the plaintiff with selling him the diamonds, and reminded him of the amount of money paid him.

When Parrish and Gow were brought to the bar for trial Parrish, for the first time, repudiated his whole story implicating the plaintiff, completely exonerated Gow from any participation in the theft, and entered a plea of nolle contendere.  On the trial of the case in hand an effort was made by the plaintiff to prove that at the time fixed for the hearing before the magistrate the counsel for the defendant expressed the belief, in the presence of the prosecutor, that the plaintiff had no participation in the crime, for the purpose of showing that the prosecution was carried on after knowledge of the plaintiff's innocence.  This was denied by counsel, and various witnesses for the defense.  We attach no importance to this feature of the case, as we have to do only with the question of probable cause at the time of making the charge that resulted in the plaintiff's arrest.  Was the statement of facts made by Parrish a justification of the

charge? We think it was. To a proper solution of the question it is important to keep in mind that the attitude of Parrish, when brought to trial, should exert no influence in the determination of that question. We are limited to the facts as they appeared to the prosecutor at the time of the criminal charge. They were related by Parrish in a very circumstantial manner, tending strongly to inspire confidence in his story. When accused of having possession of the stolen property he made no attempt to conceal anything from the prosecution, but accounted for that possession by a purchase from the plaintiff at the very time of the theft. His taking the stolen diamonds to different jewelers, leaving them there in his own name, returning them to the company on a newspaper report of the larceny, with two of them mounted by local jewelers in a way to afford some clue to his discovery, were matters likely to create more or less confidence in the truth of his subsequent statement that the plaintiff and not he had the first possession of the stolen goods on the day of the theft. The plaintiff complains that the defendant should have made a more thorough investigation of not only Parrish's story, but the circumstances of the larceny. It is difficult to see wherein the defendant was negligent or reckless in that regard, or could have done more than was done to discover the real thief. We know of no rule requiring a prosecutor, when a crime is unquestionably committed by someone, to prove on a trial for malicious prosecution that he exhausted every possible means of discovering the guilt of the party accused before he is justified in making a charge. If the prosecutor had reasonable grounds for believing, and did believe, that the plaintiff stole the diamonds in which the defendant had a special property, this was sufficient to establish probable cause. We are of opinion that we should have held as a matter of law that the facts that were either admitted or established by uncontradicted evidence constituted reasonable and probable cause justifying the defendant's arrest,

and therefore that we should have affirmed defendant's
point.  It is unnecessary to cite any one or more of the
many recent cases defining reasonable and probable
cause and holding that it is the duty of the trial judge,
when the facts are either admitted or established by un-
contradicted evidence, to declare as a matter of law
whether they establish probable cause.  We are not in-
different to the hardship caused the plaintiff by the
prosecution, resulting in his imprisonment for two and a
half months, but it was caused solely by Parrish, against
whom the plaintiff has already obtained a judgment and
recovered the amount thereof in an action against him.
It was equally established on the trial that the prose-
cutor placed all the facts in his possession, as heretofore
related, to the defendant's counsel, and on his advice
preferred the charge against the plaintiff. .

The motion for a new trial is refused; and the motion
for judgment non obstante veredicto is granted.  And
now, July 8, 1914, judgment is entered for the defendant
non obstante veredicto.

*Error assigned* was in entering judgment for defend-
ant n. o. v.

3. As to whether or not defendant believed or had
reason to believe, shortly after the information was made
that plaintiff was not guilty of the offense charged:

Keener v. Jeffries, 54 Pa. Superior Ct. 553; Mitchell v. Logan, 172 Pa. 349; Humphreys v. Mead, 23 Pa. Superior Ct. 415; Bosley v. Gerrity, 55 Pa. Superior Ct. 429.

*Charles F. Patterson* and *George B. Lewis,* for appellee.

OPINION BY ORLADY, J., October 11, 1915:

In entering judgment for the defendant non obstante veredicto, the trial judge decided that he should have held as a matter of law, that the facts that were either admitted or established by uncontradicted evidence constituted reasonable and probable cause, and therefore, that binding instructions to find for the defendant should have been given to the jury.

In an action for malicious prosecution, if the facts connected with the prosecution are admitted, or are so clearly established as not to be open to dispute, the question of probable cause is for the court: McCoy v. Kalback, 242 Pa. 123; Com. v. Storey, 49 Pa. Superior Ct. 282; Kuhns v. Ward Mackey Co., 55 Pa. Superior Ct. 164.

A careful examination of the record, with the opinion of Judge HAYMAKER, satisfies us that there is no reversible error in his conclusion.

The judgment is affirmed.