Heisey et ux., Appellants, *v.* Vansant.

Argued December 11, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel H. High,* with him *John M. Dettra, Aaron S. Swartz, Jr., Louis M. Childs, II,* and *Samuel H. High, Jr.,* for appellants.

*J. Ernest Nachod,* for appellee.

OPINION BY CUNNINGHAM, J., March 16, 1937:

Plaintiffs below and appellants herein, Naomi R. Heisey and her husband, sued to recover damages resulting from an alleged malicious prosecution of the wife plaintiff by her employer, Dr. Joseph W. Vansant. The jury returned a verdict in favor of Mrs. Heisey in the amount of $2,500, and in favor of her husband for $100, as expenses incurred by him. The court below entered judgment n. o. v. upon the ground that plaintiffs did not produce any evidence from which the jury could properly and reasonably find want of probable cause on the part of the defendant. Plaintiffs have taken separate appeals which will be disposed of in one opinion. No disposition was made of defendant's motion for a new trial.

The questions here involved require a review of the evidence. The appellee, Dr. Joseph W. Vansant, a veterinarian, resided on a fifty acre farm located in Abington Township, Montgomery County, where, in addition to practising his profession, he ran a dairy and conducted a retail milk business. He was also a commissioner of Abington Township. On March 16, 1932, he employed appellants, Mrs. Heisey as a cook and her husband as a farm hand, and agreed to pay them wages of $65.00 per month. In connection with his retail milk business, appellee employed a milkman and had a small canvas bag which was used principally by the milkman in making his collections every Monday morning. When not carried by him, it was used to hold change—twelve to fourteen dollars—for the accommodation of customers who came to the farm and was kept in a drawer of a table in the dining room.

One of Mrs. Heisey's duties was to wait upon the persons who came to the premises to purchase milk. The substance of her testimony with relation to the manner in which she performed these duties was that for the first two and a half months of her employment she received the money for the milk she sold, if the customer had the exact change, and turned it over either to the doctor or Mrs. Vansant. When the customer did not have the exact amount, she made out a memorandum bill and gave it to her employer. After the first two and a half months Mrs. Vansant told her that, as she knew where the canvas bag containing the milk money was kept, she should use it to make change for customers when necessary. She continued to do this, waiting on an average of two or three customers each day, until April 27, 1933, on which date appellee charged her with having stolen $9.12 from the money in the canvas bag and, notwithstanding her positive denial, had her arrested upon a charge of larceny.

After being imprisoned from Thursday afternoon until Friday night she was released upon bail procured by her husband. Following a hearing before a justice of the peace, at which appellee and his son testified, she was bound over to the next term of the quarter sessions. The grand jury ignored the bill of indictment and placed the costs upon appellee as the prosecutor.

From this general outline it is apparent that the fundamental issue in this subsequent civil action was whether appellants met the burden they assumed by its institution of showing that appellee did not have such probable cause as would justify a prudent man in instituting a criminal prosecution.

If they showed want of probable cause malice could be inferred. Whether the defendant in the civil action had probable cause for his unsuccessful prosecution is sometimes a question of law for the court. Upon a given state of uncontroverted facts it is the function of

a court to answer whether their existence does or does not constitute probable cause. But where material facts are in controversy, the question is a mixed one and it becomes the duty of the jury, under proper instructions from the court as to what will justify a criminal prosecution, to say whether the plaintiff in the civil action has shown want of probable cause upon the part of the defendant.

An examination of the testimony in the case at bar discloses sharp and irreconcilable conflicts therein.

Obviously the knowledge, if any, of appellee of the use by Mrs. Heisey of the money bag in the manner and for the purposes described in her testimony would have an important bearing upon the question of probable cause.

Appellee's contention was that she had no authority to use this bag, that he never authorized her to use it nor did he know of any other member of the family doing so. Mrs. Vansant denied she had ever authorized Mrs. Heisey to put money in or make change from the bag or to use it for any purpose.

The court below recognized the importance of the question of appellee's knowledge of the use of the bag by Mrs. Heisey for nearly a year. In its opinion entering judgment n. o. v. it said: "It is the contention of the plaintiffs that Dr. Vansant knew that she [Mrs. Heisey] had been given authority to go to the money bag and that, therefore, when he had her arrested he not only did not have probable cause, but also knew that she was merely doing what she had been authorized to do. If the testimony sustained this contention, it would end our consideration of the motion for judgment n. o. v. However, Mrs. Heisey does not produce any testimony that would warrant the finding that the defendant knew about any such alleged authority to go to the money bag. The statement that ...... the defendant's wife had given her authority, [is] not

sufficient in view of the flat statement by Mrs. Vansant to the effect that she had never given Mrs. Heisey authority to touch any money in the secret bag and had, of course, never told her husband, the defendant, anything about Mrs. Heisey having such authority. Under the plaintiffs' testimony, the only way that the defendant could have received knowledge of the alleged authority, would have been through Mrs. Vansant. The chain is sharply broken by Mrs. Vansant's denial."

In our opinion the trial court was not justified in thus disposing of these issues of fact. The credibility of the opposing witnesses was for the jury. Nor do we agree that the only way appellee "could have received knowledge of the alleged authority would have been through Mrs. Vansant."

As stated, appellants had the burden of proving affirmatively want of probable cause upon the part of appellee: *Altman v. Standard Refrigerator Co., Inc.,* 315 Pa. 465, 173 A. 411; *Groda v. American Stores Co.,* 315 Pa. 484, 495, 173 A. 419, 94 A. L. R. 738; *Werner v. Bowers,* 318 Pa. 518, 178 A. 831; *Randall v. Fenton Storage Co.,* 117 Pa. Superior Ct. 212, 177 A. 575; *Painter v. Roth et al.,* 118 Pa. Superior Ct. 474, 180 A. 49; and *Reby et ux. v. Whalen et al.,* 119 Pa. Superior Ct. 476, 179 A. 879. However, want of probable cause may be shown by proof of circumstances as well as by direct evidence. As Mr. Justice MAXEY, quoting with approval from 18 R. C. L., Section 32, page 51, said in *Altman v. Standard Refrigerator Co.,* supra, at page 477, ". . . . . . the burden is upon the plaintiff to prove affirmatively, *by circumstances or otherwise,* as he may be able, that the defendant had no reasonable or probable ground for instituting the original proceeding, . . . . . ." (Italics supplied).

In considering whether appellants' evidence required submission to the jury of the issue of probable cause, (the court below having entered judgment for defend-

ant n. o. v.) the evidence, as a whole, must be viewed in the light most favorable to them and they are entitled to the benefit of all reasonable inferences which may be drawn therefrom.

Thus viewed, these circumstances, among others, are shown: Appellee's family consisted of himself, his wife, his son Winder, and two older daughters. During the period in question, the canvas bag was kept underneath the linens in the middle drawer of a serving table in the dining room. The kitchen adjoined the dining room on the north. At the south end of the dining room was a short hall which led, on one side into the living room, and on the other into the doctor's office. The doors between all these rooms were kept open; the family usually ate in the kitchen which was large and light; Mrs. Vansant spent part of her time in the kitchen and part in the appellee's office keeping books.

During the entire period of her employment with defendant, Mrs. Heisey waited on an average of two or three customers a day who came to the kitchen to buy milk. Appellee admitted that customers came to the house to buy milk and that Mrs. Heisey handled the money which she received from the sales she made; it nowhere appears that she turned this money over to appellee directly or to his wife after the first couple of months. There was evidence that another receptacle, a vase in the shape of a frog, containing change was kept in the kitchen. Mrs. Heisey, however, denied she ever used this to make change or ever deposited the milk money in it.

In immediate connection with the arrest of the wife appellant these circumstances appear from the evidence. On April 27, 1933, Mrs. Heisey assisted the appellee with an operation, after which he went into his office for a few minutes and then came into the kitchen and asked Mrs. Heisey, "How much money did you take out of the money bag?" Upon Mrs. Heisey's

denying that she had taken anything from the bag, he stated to her that if she would sign a written confession, which he then produced and placed before her, "...... he wouldn't say anything about it, and ...... would keep everything quiet," but that if she did not sign it, he would have her behind the bars within an hour that he would call the police and take her to court where they would put her in jail for from six months to two years. Mrs. Heisey continued in her denial and refused to sign the paper. Appellee called a police officer on the 'phone, who came immediately to the farm. Appellee asked him to try to persuade Mrs. Heisey to sign the confession but she persisted in her refusal. She asked the officer if he would advise her to sign it if she were not guilty, to which he replied in the negative.

Other items of evidence relied upon by appellants, as indicating that the prosecution was not based upon an honest and reasonable belief by appellee in the guilt of Mrs. Heisey, but was instituted for an ulterior purpose, were these: In January, 1933, appellee informed appellants that, due to hard times and shortage of cash, he would pay them only $55.00 a month in cash, retaining $10.00 each month which they would receive in a lump sum at the end of nine months; appellants agreed to this arrangement. While Mrs. Heisey was preparing to go to the police station appellee spoke to her husband about her alleged thefts and her refusal to sign a confession. Mr. Heisey asked appellee for the $30.00 retained out of their pay, to which appellee replied that appellants would never get it and warned Mr. Heisey that if he got smart about it he would lock him up also.

On the other hand, appellee, in support of his contention that he had probable cause, showed by the testimony of his son that about the middle of March, 1933, the son had seen Mrs. Heisey with her hand in the

money bag upon several occasions and had so reported to his father. Appellee himself testified: "Then, from that time on, I counted every night before I went to bed, every penny that was in that bag, and made a note of how much change, and what denominations of money was left in it." As a result, he found $4.00 missing on March 30, 1933, $1.00 on April 4th, $2.42 on April 21st, and $1.70 on April 26th, or a total of $9.12. Without mentioning to them that he suspected Mrs. Heisey of theft, appellee, about April 15, 1933, called appellants and informed them that, due to hard times, he was going to cut their wages to $45 per month, that they could either stay and take the cut, or, if they decided to leave, he would give them a few weeks to look for another job. Two days later appellants told him they had decided to leave on the first of May.

Again, the credibility of the appellee and of his son and the significance, if any, of the son's testimony, in view of Mrs. Heisey's own statement that she handled the bag frequently for the purpose of putting the proceeds of sales into it and obtaining change out of it, were necessarily for the jury. Appellee's explanation with relation to the retention of $10 a month out of appellants' wages was that it was in the nature of a bonus to which they would be entitled only if they remained in their employment for nine months after the first of January, 1933.

Appellee also showed that before instituting the prosecution he consulted the district attorney of Montgomery County and one of his assistants, both of whom advised him that, in their opinion, he would be justified in having a warrant issued for the arrest of Mrs. Heisey. The record does not disclose what facts appellee related to these officers. Clearly, the obtaining of such advice does not in itself furnish a defense to an action for malicious prosecution. The weight to be given such evidence depends upon whether appellee

sought the advice of counsel in good faith and made a full, candid and fair disclosure of the facts: *Farneth v. Commercial Credit Co. et al.,* 313 Pa. 433, 441, 169 A. 89; *Groda v. American Stores Co.,* supra; and *Randall v. Fenton Storage Co.,* supra.

From this review of the testimony, we think it clear that the facts and the inferences reasonably deducible therefrom were in such dispute that appellee was not entitled to binding instructions in his favor. In other words, we are of opinion that appellants were entitled to go to the jury, under proper instructions relative to the issues arising under the statement of claim and the burden of proof resting upon appellants: *Hornig v. Hornig,* 125 Pa. Superior Ct. 501, 189 A. 514. The remedy for an excessive verdict or one against the clear weight of the evidence is a new trial. As the motion for a new trial is still pending in the court below, these matters, upon which we, of course, express no opinion, will be for consideration and disposition by the trial court.

The judgment is reversed and the record remitted to the end that appellee's motion for a new trial may be disposed of.