## Miller *v.* Pennsylvania Railroad Company, Appellant.

Argued November 21, 1951; reargued May 27, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Theodore Voorhees,* with him *F. Hastings Griffin, Jr., Philip Price,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Henry W. Balka,* with him *Edward J. Cooke, Jr.,* and *Jesse N. Goldstein,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 25, 1952:

Plaintiff, Clarence W. Miller, filed this complaint in trespass for malicious prosecution against defendant, Pennsylvania Railroad Company. The court below submitted the issue of want of probable cause to a jury which found for plaintiff in the sum of $4,780. That court, after dismissing defendant's motions for judgment n.o.v. and for new trial, entered judgment on the verdict. Defendant appealed.

Submission of this case to the jury violated an ancient principle of law undeviatingly followed by this Court over many years, viz.: in a suit for malicious prosecution, where there is no conflict in the testimony, then even though the testimony be oral, *want of probable cause is a question exclusively for the court.*

The reason for the rule of law has been frequently stated; text-writers assert that courts *unanimously* agree that the interest of society in law enforcement is the more important of conflicting public policies. Typical excerpts from legal text-books follow: ". . . beginnings [of a tort action for abuse of legal procedure in criminal prosecutions] are somewhat obscure, but it was coming into use in Elizabeth's reign and eventually became known as the action for malicious prosecution. Its progress was gradual, for it had to make its way between two competing principles,—the freedom of action that every man should have in bringing criminals to justice and the necessity for checking lying accusations of innocent people. For some time the Judges oscillated between apprehension of scaring off a just accuser and fear of encouraging a false one; but Savile v. Roberts (1698) put the action on a firm basis and indeed it is so much hedged about with restrictions and the burden of proof upon the plaintiff is so heavy that no honest prosecutor is ever likely to be deterred by it from doing his duty. It is notable how rarely an action is brought at all, much less a successful one, for this tort." Winfield, Law of Tort (1948) p. 610.

"There is no other cause of action which is more carefully guarded. Unfortunate defendants who are wrongfully subjected to the judicial process must bear that risk except in the most extreme cases. When such a defendant in turn becomes plaintiff he has an uphill fight to maintain his suit. . . . Strict, uniform, and expert rulings are at a premium in these cases. Judges play a dominating part in handling them. 'Questions of law' and 'questions of fact' take on different hues here from that found in most other cases." Green, Judge and Jury (1930) p. 338.

"Malicious prosecution is an action which runs counter to obvious policies of the law in favor of en-

couraging proceedings against those who are apparently guilty, and letting finished litigation remain undisturbed and unchallenged. It never has been regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." Prosser on Torts (1941) p. 870.

The following facts are undisputed: for some time prior to June 29, 1947, defendant had discovered various thefts of merchandise from freight cars in its Harrisburg freight yards. Most of the thefts occurred during the 4 p.m. to midnight shift. On June 29, 1947, at about 10:35 p.m., Sergeant Frantz of the Railroad Police, saw a man dressed in khaki cross the freight yard, go to some high grass, pick up a package and place it in a pick-up truck. Because Frantz was on foot and about 500 feet away, he was unable to follow the truck. On the same night, at about 4:30 a.m., Frantz discovered that the seal on a freight car had been broken and that three blowtorches were missing from inside the car. The Railroad Police made no progress in solving the crimes until July 13, 1947, when Sergeant Frantz and another railroad policeman discovered that another railroad car had been entered and a quantity of T-shirts removed. A check was then made of the employes' automobiles and the T-shirts were found in a car owned by Harry Kurtz, one of defendant's employes. When Kurtz returned to his car, he was questioned and then taken to the office of the captain of the Railroad Police (Captain Monaghan). Kurtz admitted the theft of the T-shirts and also of the blowtorches. Kurtz stated that one McCall and another man whose name he did not remember but whom he described as about "five feet eleven and 177 pounds" and who wore khaki clothes, were his accomplices. At the request of Captain Monaghan, a state policeman (Sergeant Funk) was assigned to the case. *McCall* was then questioned and placed under arrest. One of

the missing blowtorches was discovered at McCall's home. When questioned by Funk, McCall stated that he, Miller (plaintiff) and Kurtz (all were employes of defendant working together as a team of brakemen on the same evening shift) had taken the blowtorches from the railroad car. When McCall was taken to the Pennsylvania State Police barracks, he repeated his allegations that Miller and Kurtz also "took a torch from this car." His statement, taken in the presence of Sergeants Funk (State Police) and Frantz (Railroad Police), was reduced to writing and signed by McCall and later sworn to by him before a notary public.

Frantz obtained a search and body warrant for plaintiff and on the next day, July 14, 1947, accompanied by Sergeant Funk, went to Miller's house. A search of the house failed to reveal a blowtorch of the type taken from the railroad car. Plaintiff was then taken to the police department of defendant and questioned by the two officers and Captain Monaghan. He was then told that Kurtz and McCall had accused him of stealing a blowtorch. What occurred thereafter is summarized by the court below: "After the questioning the plaintiff was lodged in the city jail by Sergeant Frantz until lunchtime, at which time he was taken to lunch by Frantz and Captain Monaghan. These railroad officers advised the plaintiff that they had made inquiries and knew the plaintiff had the torch. They took plaintiff to his home and told him to 'go in and get the torch.' He again denied the accusation and invited them to make another search, which they declined to do. Captain Monaghan then said 'If you are innocent, fight it the whole way.' When the plaintiff was being questioned by the railroad police at the railroad offices, Captain Monaghan told him they were not interested in him, but that 'they would like to find out who else was taking property off the railroad.' They promised

to 'make it right with [plaintiff] if [he] could tell them.' He denied any knowledge of the matter."

Sergeant Frantz testified: "He was then placed in the Harrisburg City Jail for safekeeping. Captain Monaghan and myself then referred the case in person to Assistant District Attorney Keene of Dauphin County, Harrisburg, and presented him with the facts of the case. And Mr. Keene directed us to proceed with the prosecution of the three mentioned men."

Plaintiff then was taken before Squire Richards in Harrisburg where he was placed under arrest and, upon the testimony of Frantz and Monaghan, was charged with burglary and larceny of a blowtorch.

Upon indictment by the Grand Jury, plaintiff was tried before Judge WRIGHT without a jury on the charges of burglary and receiving stolen goods. Judge WRIGHT found him not guilty. Plaintiff thereupon instituted this action for malicious prosecution.

This Court has recently considered the elements of an action for malicious prosecution. In *Byers v. Ward*, 368 Pa. 416, 84 A. 2d 307, it was stated: "The basis of an *ex delicto* action of malicious prosecution is for the recovery of damages which have proximately resulted to the person, property or reputation from a previous unsuccessful civil or criminal proceeding which was prosecuted *without probable cause and with malice* [citing cases]. *Want of probable cause* is an indispensable element: Simpson v. Montgomery Ward & Company, 354 Pa. 87 (and many cases cited therein), 46 A. 2d 674. And such want is in no sense dependent upon the guilt or innocence of the accused. Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting [citing cases]. While the return of a true bill of indictment by the grand jury may constitute *prima facie* evidence of *probable cause,* Graham v. Noble, 13 S. & R. 232, 234, the

corollary of that legal principle is that an acquittal is not sufficient in itself to establish *want of probable cause* [citing cases].

"The question of want of probable cause is exclusively for the court. Where there is no conflict in the testimony, the court has no need for a finding of a jury."

Plaintiff has the burden of proving want of probable cause: *Simpson v. Montgomery Ward & Company*, 354 Pa. 87, 46 A. 2d 674. Probable cause has been defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense: *Altman v. Standard Refrigerator Company, Inc.*, 315 Pa. 465, 173 A. 411. Plaintiff failed to sustain this burden. Plaintiff's sole witness was the plaintiff himself. In substance Miller testified that he: (1) was previously of good repute; (2) was acquitted of the crime charged; (3) protested his innocence throughout; and (4) was not caught with the stolen goods. None of this testimony was disputed, and there was no issue of fact raised concerning the same. Plaintiff has produced no affirmative evidence that defendant lacked probable cause. Plaintiff does not make out a *prima facie* case simply by proving his arrest on a criminal charge and his acquittal: *Simpson v. Montgomery Ward & Company*, supra; *Byers v. Ward*, supra. The fact that Captain Monaghan stated that if plaintiff were innocent he should fight the charge the whole way does not aid the plaintiff. Such a statement does not indicate that Monaghan believed plaintiff innocent of the charges about to be made against him. He was merely encouraging plaintiff not to be discouraged by the evidence against him if in fact he were innocent. The circumstances known to Monaghan made Miller a logical suspect.

Plaintiff was the only person known to be at the scene of the crime other than the two who admitted guilt. While this is not conclusive proof of plaintiff's guilt, it forms a reasonable basis for suspicion. Bad motive may not be inferred simply because a policeman asks two criminals whether the third man present (plaintiff) was also involved in the crime and believes them when they answer "yes". The uncontroverted testimony is that the railroad police suspected the three brakemen who were on duty when the larceny occurred. Their suspicions concerning two of the three brakemen were confirmed. Even if the policemen were mistaken about the third brakeman (plaintiff), there was not a scintilla of testimony to show that this was *not* an honest error but was motivated by *malice*. The information given by Kurtz and McCall was substantiated by the known facts in many ways. Kurtz's statement implicated McCall; this was corroborated by McCall's confession. Kurtz's description of the third thief fit plaintiff exactly. McCall's statement, given independently, implicated Kurtz, and the railroad police already knew that this was true. To draw any adverse conclusion from the refusal of Kurtz to name Miller when he named McCall, on the theory that Kurtz had been friendly with Miller for a longer period and should have remembered his name more readily, overlooks the obvious possibility that Kurtz would be more anxious to shield his friend of longer standing.

After a diligent search of the entire record, we are unable to find any conflict respecting a single item of the testimony describing the events leading up to this prosecution. Upon such a record, it is impossible to sanction submission of the case to the jury. The true functions of court and jury in an action for malicious prosecution are stated in Restatement, Torts, §673, comment d: ". . . upon the issues of favorable termina-

tion and probable cause, the jury has only the function of finding the circumstances under which the defendant acted. The court determines whether, under those circumstances, the termination was sufficiently favorable to the accused, and whether the defendant had or had not probable cause. Where there is no conflict in the testimony as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the testimony which presents an issue of fact for its determination."

This comment was cited with approval in the exhaustive and learned opinion of Chief Justice MAXEY in *Simpson v. Montgomery Ward & Co.*, 354 Pa. 87, 46 A. 2d 674, and the same rule was reiterated in *Byers v. Ward*, 368 Pa. 416, 84 A. 2d 307. Those cases in turn followed ample precedent: *Roessing v. Pittsburg Railways Company*, 226 Pa. 523, 75 A. 724; *McCoy v. Kalbach*, 242 Pa. 123, 88 A. 879; *Altman v. Standard Refrigerator Company, Inc.*, supra; *Trautman v. Willock*, 88 Pa. Superior Ct. 404.

It is highly significant that no attempt is made to show malice except by inference because of alleged lack of probable cause. It is true that such an inference of the existence of malice is permissible, but it has rarely been sufficient unaided by some showing of private motive; e.g., *Smith v. Walter*, 125 Pa. 453, 17 A. 466, was a dispute between neighboring owners of rival business establishments; *Taubman v. Schulte, Inc.*, 302 Pa. 170, 153 A. 150, a dispute between employer and employee, resulted in a directed verdict for defendant; and *Hubert v. The Alta Life Insurance Company*, 130 Pa. Superior Ct. 277, 196 A. 513, was an attempt to compel collection of a debt through use of criminal process. Plaintiff in the present case introduced no evidence at all to prove malice or to overcome

the defendant's evidence that this prosecution was part of a *bona fide* effort by the railroad police to protect the railroad property from further depredations by bringing the offenders to justice.

Appellee attributes great importance to the fact that the principal item of evidence against the plaintiff was the statement of a confessed accomplice. It is true that such an accusatory statement must be closely scrutinzed, but "It must be remembered that there is no rule of law in this State which forbids a conviction on the uncorroborated testimony of an accomplice: [citing cases]": *Commonwealth v. Elliott,* 292 Pa. 16, 22, 140 A. 537. See also *Commonwealth v. Bruno,* 316 Pa. 394, 402, 175 A. 518; *Commonwealth v. Morrison,* 157 Pa. Superior Ct. 366, 370, 43 A. 2d 400; *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 146, 50 A. 2d 703. It would be obviously inconsistent to decide that the same evidence which would be sufficient to support a jury's *verdict of guilty* is insufficient, as matter of law, to form the basis of such a charge.

It is to be noted that plaintiff was held for court by a justice of the peace and indicted by a grand jury. It is everywhere held that the actions of each of these judicial bodies are affirmative evidence of probable cause: Restatement, Torts, §§663(2) and 664(2). No suggestion has been made that either the justice of the peace or the grand jury was imposed upon in any way or that the evidence was distorted in presentation to them. What appeared to each of them to be *probable cause* for prosecution may well have appeared in the same light to the defendant railroad.

The judgment of the court below is reversed, and judgment entered for defendant *non obstante veredicto.*

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

I dissent from what I consider an unjustified reversal of the judgment of the court below.

The chief problem in the law governing malicious prosecution actions is to maintain the delicate balance between the interest of society in the enforcement of the criminal law and the protection of the individual against unjustified criminal charges involving pecuniary loss and impairment of reputation.

In the present case plaintiff recovered a verdict, and defendant has appealed from the refusal of the trial court to enter judgment in its favor n.o.v. or to grant a new trial.

It appears, according to defendant's testimony, that for some time there had been thefts of merchandise from cars in its Harrisburg freight yards. One night Sergeant Frantz of the defendant Railroad Company's police discovered that the seal on a freight car had been broken and that 3 out of 12 gasoline blowtorches that had been contained in a box in the car were missing. A couple of weeks later it was found that some men's shirts had been taken from another car, some of which were thereupon discovered in an automobile belonging to a brakeman named Kurtz. The latter was taken to the office of Captain Monaghan of the Railroad police, and, upon being questioned there, he admitted that he had participated in the theft of those shirts. He also stated that he and two other brakemen had stolen some blowtorches; he identified one of these brakemen as Fred J. McCall who was a fellow workman on his shift; the "other fellow" he described as a man of approximately 5 feet 11, weighing 177 pounds, and wearing khaki clothes. It is to be noted at this point that Kurtz had known the plaintiff, Clarence W. Miller, for approximately four years, having worked with him side by side during that period; he had worked with Mc-

Call for only two years. McCall was arrested, his house was searched and a blowtorch found there, whereupon he gave a written, sworn statement to Sergeant Funk of the Pennsylvania State Police in which he said that he, Miller, and Kurtz had come upon a car the seal of which had been broken and that each of them had taken from it a blowtorch. McCall testified that he did not remember whether the police mentioned Miller to him or he first mentioned Miller to them.

Sergeants Frantz and Funk went to the plaintiff's house, searched it, and found an old blowtorch there belonging to plaintiff, but none that had been taken from the freight car. Nevertheless they took plaintiff to the headquarters of the Railroad police, questioned him for an hour or more, and then lodged him in the city jail; later in the day they took him home where plaintiff invited them to search his house again but they refused to do so. Captain Monaghan said to plaintiff: "If you are innocent fight it the whole way", also that "they weren't so interested in me; that they would like to find out who else was taking property off the railroad," and they would "make it right" with him if he would tell them "who was stealing the stuff". Plaintiff told him he knew nothing of the matter whatever; then and at all times since he stoutly asserted his innocence, but Sergeant Frantz swore out a warrant against him on the charge of larceny, his affidavit alleging that plaintiff and McCall had stolen a blowtorch "valued at $100.00 more or less". (It was testified that a blowtorch was actually worth about $7 or $8). Sergeant Frantz and Captain Monaghan appeared before the Justice of the Peace; of course, they knew nothing of their own knowledge inculpating plaintiff, and they merely presented the written statement of McCall. The Justice held plaintiff in $1500 bail; he was thereupon confined in jail until the following morning when his wife deposited in cash the amount

of bail thus fixed. Two months later he was tried, together with Kurtz and McCall, by a judge without a jury, jury trial having been waived; Kurtz pleaded guilty, McCall was found guilty, and plaintiff was acquitted and discharged.

In order for a plaintiff to recover in an action for malicious prosecution, it is incumbent upon him to prove not merely that he was ultimately acquitted of the charge against him, but that defendant, in instituting the prosecution against him, acted without reasonable and probable cause and with malice: *Werner v. Bowers,* 318 Pa. 518, 178 A. 831; *Stritmatter v. Nese,* 347 Pa. 9, 31 A. 2d 510; *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 96, 46 A. 2d 674, 678; *Byers v. Ward,* 368 Pa. 416, 421, 84 A. 2d 307, 310. While it is exclusively for the jury to pass on the truthfulness of the testimony, it is for the court to determine, as a matter of law, whether the admitted or established facts constituted reasonable and probable cause: *Taylor v. American International Shipbuilding Corporation,* 275 Pa. 229, 119 A. 130; *Altman v. Standard Refrigerator Co., Inc.,* 315 Pa. 465, 480, 481, 173 A. 411, 417; *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A. 2d 674; *Byers v. Ward,* 368 Pa. 416, 421, 422, 84 A. 2d 307, 310. Malice need not be independently and affirmatively proved, but may be inferred from the absence of reasonable and probable cause: *Smith v. Walter,* 125 Pa. 453, 468, 17 A. 466; *Taubman v. Schulte, Inc.,* 302 Pa. 170, 172, 153 A. 150, 151; *Hubert v. Alta Life Insurance Co.,* 130 Pa. Superior Ct. 277, 284, 196 A. 513, 516.

Did plaintiff, then, in the present case sustain the burden of proving defendant's lack of reasonable and probable cause for instituting the prosecution against him? There was testimony (1) that plaintiff is a married man 33 years of age and the father of a 14

year old daughter, that he is the graduate of a senior high school, that he worked during a period of 16 years for various commercial and industrial concerns and for 4½ years for the Pennsylvania Railroad itself, and that he had never previously been accused of any offense other than traffic violations; (2) that he was acquitted of the charge made against him by defendant; (3) that he had at all times protested his innocence; (4) that a search of his house had failed to disclose his possession of any stolen blowtorch although, if he had taken it, it would unquestionably have been found there since the taking of these blowtorches was obviously for personal use, only 3 having been removed from a box of 12; McCall had in his home the one he had taken, but plaintiff already had his own, which he showed to the police; (5) that, whatever the other thefts that may have occurred in defendant's freight yards and in which McCall and Kurtz participated, there was not the slightest suggestion or accusation on the part of anyone that plaintiff was implicated therein; (6) that the mere fact that plaintiff worked on the same shift as Kurtz and McCall certainly did not warrant any inference or belief that he had joined in the thefts which those men may have committed; (7) that the only information upon which defendant's police even professed to act was that given to them by Kurtz and McCall,—information hereinafter discussed —and that their own investigation as to the reliability of that information by searching plaintiff's house left it utterly devoid of corroboration. Thus it is abundantly clear that *plaintiff proved not merely his acquittal but a whole series of collateral facts and circumstances which revealed the wholly tenuous and inadequate grounds upon which defendant acted.* What more, it may be asked, could he possibly have proved to make out a prima facie case of a lack of reasonable and probable cause?

Since defendant relied upon the statements made by Kurtz and McCall, an analysis of the testimony in regard to those statements is in order. Kurtz immediately identified McCall as one of those guilty of the theft, but he did not identify plaintiff; if he had been *able* to do so, why, having known plaintiff for over four years, did he not name him as he named McCall (with whom he had worked for only two years) instead of describing the "other fellow" as being of an approximate weight and height? Such a method of description, so far from justifying a belief that he was accusing *plaintiff*, would, on the contrary, lead to exactly the opposite conclusion; it would indicate that he did not actually know who the "other fellow" was. All, therefore, that defendant had to act upon was the statement of McCall, and the learned trial judge in the court below properly characterized that statement as having been made "under dubious circumstances" since McCall testified that he could not remember whether *he* had named plaintiff or whether he had merely assumed plaintiff's guilt because his name was *suggested* to him by the police. Moreover it is hornbook law that the word of a confessed criminal accusing another of participation in the crime must be closely scrutinized, and, *unless corroborated*, must be accepted with caution before it may be relied upon, since such information comes from a corrupt source: *Commonwealth v. Haines*, 257 Pa. 289, 297, 101 A. 641, 644; *Commonwealth v. Turner*, 367 Pa. 403, 409, 410, 80 A. 2d 708, 711, 712. As stated by Judge Brewer (later Mr. Justice Brewer of the United States Supreme Court) in *Blunk v. Atchison, T. & S. F. R. Co.*, 38 F. 311, 313 314: ". . . if a reputable citizen . . . or any man of known integrity, makes an affidavit in which he details his own knowledge of a crime, and a person acts upon that affidavit, he acts with probable cause in instituting a prosecution for the offense. But where a person . . . of con-

fessed criminality . . . makes a statement in respect to crime, not merely in reference to himself, but implicating others, *then common prudence requires that the truth of that statement should be investigated before the persons named in it are charged with crime.* If, however, . . . the party to whom that confession is made *investigates* those particular statements, *and finds that they are substantially accurate,* and acts upon that information *thus verified* by personal investigation and information, he is acting upon probable cause." (italics supplied). In Restatement, Torts, §662, comment (i), it is said: "In determining whether an investigation should be made, the following factors are important; . . . the character of the source from which the accuser's information comes. The accuser may properly be required to make inquiry as to the veracity of his informants where his belief is founded upon their information." It is a serious matter publicly to brand any person—however humble —as a thief, unless there is reasonably good ground to warrant the making of such an accusation, and here there was none.

In short, then, the court below was wholly justified in refusing to find as a matter of law that defendant had acted in this prosecution on reasonable and probable cause. Plaintiff was put in jail, subjected to a criminal trial, and the account of the charge against him published in the newspapers of Harrisburg, where he lived, to the impairment of his reputation, on the mere statement of a confessed thief given "under dubious circumstances" that plaintiff, like himself, had stolen a blowtorch,—*a statement which not only was uncorroborated by other facts or circumstances, but, on the contrary, was affirmatively found, as a result of the investigation made by defendant's police, to be without support.* An exhaustive reading of all the authorities reveals no case in which there was held to be

reasonable and probable cause for a prosecution where the facts relied upon were as flimsy as those here present.

This brings me, then, to defendant's claim for justification by reason of testimony given by Sergeant Frantz that, *after* plaintiff had been "placed in the Harrisburg City Jail for safekeeping", Frantz and Captain Monaghan "referred the case in person to Assistant District Attorney Keene of Dauphin County, Harrisburg, and presented him with the facts of the case. And Mr. Keene directed us to proceed with the prosecution of the three mentioned men." The first observation to be made with reference to that testimony is that it constitutes merely an *oral* statement, and as such cannot, of course, be assumed by the court, as a matter of *law,* to be *factually* true. It seems scarcely necessary to refer in support of that proposition to the case of *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523, an authority declaring so fundamental a principle of evidence that it has been cited by our appellate courts 92 times during the 20 years which have elapsed since it was decided. It must be immediately manifest that plaintiff, while not *admitting* the truth of that testimony, could not possibly have refuted it, not having been a party to the alleged interview with the district attorney, and especially so in this case because Mr. Keene had since died. Obviously it would be absurd to hold that a defendant in any case of malicious prosecution may always obtain judgment in his favor merely by asserting, whether truthfully or otherwise, that he had consulted counsel or the prosecuting official,—a fact which would not lie within the cognizance of the plaintiff and therefore be beyond his ability to rebut.

But there is an even more serious answer to defendant's contention. The mere cryptic statement that

members of defendant's police force referred the matter to the district attorney and "presented him with the facts of the case" is wholly insufficient under the authorities to constitute a defense determinable by the court as a matter of law. It is only if the advice of an attorney or the direction of a district attorney is sought *in good faith* and after a full disclosure of *all* the facts within the accuser's knowledge and information that such advice or direction is effective to disprove the existence of malice in the institution of the prosecution, and it is *for the jury to determine* whether such good faith existed or whether the advice was merely to protect the accuser from liability for initiating proceedings upon which he may already have decided; this is especially important in the present case where defendant's police had already placed plaintiff in jail before they claim to have conferred with the district attorney. It is *also for the jury to find* to what extent there was a full disclosure of all the facts or whether material non-supporting facts were withheld: Restatement, Torts, §666, and comment (g). For example, did they tell the district attorney about their searching plaintiff's house and finding no stolen blowtorch there? Had they done so the district attorney's opinion might well have been, and probably would have been, quite different. It was held in *Smith v. Walter*, 125 Pa. 453, 17 A. 466, that it was error in that case for the trial judge to charge the jury that, if they believed defendant's counsel spoke the truth when he testified that the defendant had told him the facts of the case and on the basis of those facts he had advised prosecution, they should find a verdict for defendant. Mr. Justice MITCHELL there said (p. 468, A. p. 466) that this was "an incorrect statement of the law, because it omitted all reference to the truthfulness and completeness of the defendant's statement to his counsel. Every word

of Mr. Derr's testimony could be absolutely true, and yet the statement made to him by his client might be so incomplete, so lacking in some essential facts, so uncandid, or colored by malice or prejudice, as to be no defense at all. . . . The real issue was whether defendant had made a fair and full statement of the facts to his counsel, and then in good faith followed his advice. *This cardinal fact the court took away from the jury, by assuming that the statement as testified to by Derr and his client, was sufficient in law, and leaving only to the jury the fact that it had been made. This was an encroachment on the province of the jury.*" (italics supplied).

In *Aland v. Pyle*, 263 Pa. 254, 257, 258, 106 A. 349, 350, it was said, per Mr. Justice WALLING: "The fact that a prosecution is instituted upon advice of counsel after a fair statement of the facts is not conclusive evidence of the absence of malice. 'It is not the advice, however, that rebuts the presumption of malice, but the innocence of defendant's conduct, of which his seeking advice is merely evidence; and whether the advice is a good defense depends upon the good faith with which it is sought and followed, *and this is a question for the jury* to determine from the evidence.'" (citing *Smith v. Walter*, supra). In *Farneth v. Commercial Credit Co.*, 313 Pa. 433, 441, 169 A. 89, 92, Mr. Justice SCHAFFER said: "The defendant offered evidence to show that the prosecutions were instituted upon the advice of counsel. In itself, this is not a complete defense. It must further be shown that a full disclosure of the facts was made *and that good faith was exercised in seeking the advice.*" (italics supplied). See also: *Groda v. American Stores Company*, 315 Pa. 484, 493, 494, 173 A. 419, 422, 423; *Randall v. Fenton Storage Co.*, 117 Pa. Superior Ct. 212, 217, 218, 177 A. 575, 577, 578; *Heisey v. Vansant*, 126 Pa. Superior Ct. 373,

380, 381, 190 A. 726, 730; *Hubert v. Alta Life Insurance Co.*, 136 Pa. Superior Ct. 147, 152, 7 A. 2d 98, 101. All these cases are to the effect that the fact of the prosecutor's obtaining legal advice and acting thereon is to be considered as tending to rebut malice rather than as bearing upon the issue of probable cause, and that whether or not the presentation to counsel or the prosecuting officer was adequate and fair and whether it was sought and acted upon in good faith is in *every* instance *a question for the jury.*

Defendant, in addition to asking for judgment n.o.v., moved for a new trial on the ground that the court had improperly permitted cross-examination of the witness McCall. McCall was called by defendant to identify his signature to the statement given by him to the police, whereupon counsel for plaintiff cross-examined him at length as to the circumstances under which he made, signed and swore to the statement and the conversations that had taken place between him and the police in reference thereto. The extent of permissible cross-examination is largely a matter for the discretion of the trial court, and here I see no abuse of that discretion. Since the identification by McCall of his signature carried with it an inference that the contents of the statement were voluntarily made and assented to by him, it was proper to attempt to elicit from him that the fact stated therein in regard to plaintiff's complicity in the theft was made upon the suggestion of the police rather than of his own initiative: see *Smith v. Philadelphia Traction Co.*, 202 Pa. 54, 51 A. 345; *Conley v. Mervis*, 324 Pa. 577, 188 A. 350; *Lester v. Century Indemnity Co.*, 356 Pa. 15, 18, 50 A. 2d 678, 680.

Holding, as I do, the views thus expressed, I earnestly dissent from the present decision reversing the judgment of the court below.

Mr. Justice JONES and Mr. Justice MUSMANNO concur in this dissenting opinion.

---

CONCURRING OPINION BY MR. JUSTICE BELL, June 26, 1952:

Mr. Justice STEARNE has so ably and I believe convincingly stated and applied the rule of law in malicious prosecution cases that it would be superfluous to add anything thereto were it not for the basic error in the minority opinion which, unless more specifically pointed out, may lead to future misunderstandings in this class of case. The difference between the majority and minority on the vital issue of probable cause seems to be that the majority believe that all cases involving unconflicting and unimpeached oral testimony, whether offered by plaintiff, or by defendant, or by both, must be decided as a matter of law exclusively by the Court; while the minority believe such oral evidence, unless it be "actually" admitted by plaintiff, must be submitted to the jury under proper instructions from the Court.

The minority rely upon the case of *Nanty-Glo Boro. v. American Surety Co.*, 309 Pa. 236, 163 A. 523 to support their position. This Court specifically decided in *Altman v. Standard Refrigerator Co.*, 315 Pa. 465, 482, 173 A. 411, that the *Nanty-Glo Boro.* case and the general rule therein asserted, i.e., oral evidence, when sufficient to make out a prima facie case, must be submitted, even when uncontradicted, to the jury, does not apply or prevail in malicious prosecution cases. A similar ruling was made in *Curley v. Automobile Finance Co.*, 343 Pa. 280, 290, 23 A. 2d 48, where this Court entered a judgment non obstante veredicto in an action for malicious prosecution where

the oral testimony of the defendant was uncontradicted, and said: "In the trial of cases the 'general rule' is that the jury is the trier of questions of fact. In cases of malicious prosecution *this rule . . . does not prevail,*\* for in such cases the trial judge and not the jury determines whether or not the prosecutor in the criminal case . . . had an honest and reasonable belief in the existence of a probable cause for the prosecution's initiation".

The reason for not applying the general rule (that oral evidence is for the jury) to malicious prosecution cases has often been stated by this Court. See *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 92-93, 46 A. 2d 674; *Curley v. Automobile Finance Co.,* 343 Pa. 280, 286, 23 A. 2d 48.

Furthermore, in a host of prior decisions, including the following cases, the principle so clearly set forth in the majority opinion has been unequivocally recognized and reiterated, viz., in a suit for malicious prosecution where there is no conflict in the oral testimony and only one inference can reasonably be drawn therefrom, want of probable cause is a question exclusively for the Court: *Altman v. Standard Refrigerator Co., Inc.,* 315 Pa. 465, 173 A. 411; *Stritmatter v. Nese,* 347 Pa. 9, 31 A. 2d 510; *Taylor v. Am. I. Shipbuilding Corp.,* 275 Pa. 229, 119 A. 130; *Werner v. Bowers,* 318 Pa. 518, 178 A. 831; *Lipowicz v. Jervis,* 209 Pa. 315, 58 A. 619; *Boyd v. Kerr,* 216 Pa. 259, 65 A. 674; *Roessing v. Pittsburg Rys. Co.,* 226 Pa. 523, 75 A. 724; *Robitzek v. Daum,* 220 Pa. 61, 69 A. 96; *McCoy v. Kalbach,* 242 Pa. 123, 88 A. 879; *Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 46 A. 2d 674; *Byers v. Ward,* 368 Pa. 416, 84 A. 2d 307; *Mitchell v. Logan,* 172 Pa. 349, 33 A. 554; *Sutton v. Anderson,* 103 Pa. 151; *Cooper v. Wm. R. Hart & Co.,* 147 Pa. 594, 23 A. 833;

---

\* Italics mine.

*Bernar v. Dunlap,* 94 Pa. 329; *Smith v. Ege,* 52 Pa. 419; *Stratton v. Jordan,* 77 Pa. Superior Ct. 596; *Wolf v. Stern,* 71 Pa. Superior Ct. 191; *Sheldrake v. Rumpf,* 68 Pa. Superior Ct. 546; *Kuhns v. Ward-Mackey Co.,* 55 Pa. Superior Ct. 164; *Bryant v. Kuntz,* 25 Pa. Superior Ct. 102; *Gow v. Adams Express Co.,* 61 Pa. Superior Ct. 115.

The fact that in nearly all of these cases involving as they did unconflicting oral testimony of both plaintiff and defendant, this Court entered or affirmed a judgment for defendant non obstante veredicto, demonstrates more clearly and irrefutably than any other words could, how fallacious and untenable is the position of the minority.

Where probable cause exists, malice is immaterial: *Werner v. Bowers,* 318 Pa. 518, 178 A. 831; *McCoy v. Kalbach,* 242 Pa. 123, 88 A. 879; *Dietz v. Langfitt,* 63 Pa. 234; *McClafferty v. Philp,* 151 Pa. 86, 24 A. 1042; *Lipowicz v. Jervis,* 209 Pa. 315, 58 A. 619. It is therefore unnecessary to discuss either malice or advice of counsel, or whether such matters are to be decided by the Court or by the jury.