Hugee *v.* Pennsylvania Railroad Company, Appellant.

Argued November 9, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY. MUSMANNO and ARNOLD, JJ.

*Philip Price,* with him *F. Hastings Griffin, Jr.* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellant.

*Joseph I. Levy,* with him *Samuel F. Pepper* and *Isadore Penn,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 12, 1954:

In an action of trespass for malicious prosecution the defendant, the Pennsylvania Railroad Company, appeals from a judgment of $3,000 entered on a verdict for plaintiff, John Roy Hugee.

Plaintiff was employed by defendant as cleaner for approximately seven years and against whom no charges of dishonesty had ever theretofore been made. On July 9, 1948, a police officer, an employe of defendant, arrested plaintiff on the charge of larceny. He was acquitted in the court of quarter sessions on January 18, 1949, and thereupon instituted the present action. The unconflicting and unimpeached testimony is concisely but comprehensively stated by the trial judge in his opinion overruling defendant's motion for judgment *non obstante veredicto* and for a new trial:

"The facts are that plaintiff found a hatbox on the station platform and gathered it up. After clearing up a nearby mess with his broom, he went with broom and hatbox from the platform down the steps into a corridor or tunnel beneath the tracks that led to the station offices. At the end of this corridor he might have turned left and given over the box to the Lost

288

and Found Department. Instead, he turned right and went into a locker room where cleaning supplies were kept; his reason was that he thought he was not allowed in the Lost and Found Department with a dirty broom and that he wanted to change brooms or at least leave the dirty one behind. While he was about it he decided to eat a sandwich, not having had breakfast that day. He pushed the box on top of a locker and started to get the sandwich.

"Meanwhile, the detective, who was getting a shoeshine, saw plaintiff come down the corridor with the hatbox and turn right instead of left. He got up and followed, entered the locker room, and after searching and questioning the plaintiff, took him to the baggage room, found an address in the hatbox, and arrested him . . .".

In his charge (not printed in the paper books) the trial judge said: ". . . it is for the Court, that is, the Judge, to say whether or not there was reasonable and probable cause. But the Judge is to do that and do that finally only when the evidence is undisputed, that is, where the facts are admitted, or where they are so clearly established as to admit of only one inference. In that kind of case I would say from here, 'There is', or 'There is not reasonable and probable cause' and if I found that there was probable cause, that's the end of it and I would direct you to find a verdict in favor of the defendant. In this case, however, I shall not take that position—at least not at this time, because all of the facts are not clearly established so as to admit of only one inference. The facts are not all admitted. Therefore, I need your help in telling me what you think the facts add up to; and when you have done that, then I will say at the proper time whether or not there was reasonable and probable cause, as a matter of law.

"In helping you to do exactly what you must do—because this is a bit strict and technical—I have made out something here that is called Special Findings, two questions for you to answer. They are perfectly clear, but in order to get them into the record I am going to read them to you."

The trial judge regards the undisputed testimony summarized by him as "equivocal" and not clearly established because of the existence of minor differences in the testimony and which did not have the slightest bearing upon the question of probable cause. They are whether or not (a) the articles in the hatbox were clean or dirty (b) the locker room had a lock and key (c) the officer knocked on the door before entering (d) was plaintiff eating a sandwich (e) the officer entered the locker room or the plaintiff came out (f) the location of the hatbox in the locker room. Obviously the answers to these questions were wholly collateral to the main issue, viz.: was there probable cause for the arrest.

In *Miller v. Pennsylvania Railroad Company*, 371 Pa. 308, 89 A. 2d 809, this Court had occasion to extensively explore the field of malicious prosecution. We held that where there is no conflict in the testimony want of probable cause is a question exclusively for the court. The philosophy of the doctrine was discussed and documented. We adopted the Restatement, Torts, sec. 673, comment d. Where there is no conflict in the testimony as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the testimony which presents an issue of fact for its determination. The slight differences in the testimony over such minor and wholly immaterial details obviously were not of sufficient quality and importance to raise an issue of fact.

The basis of an action of malicious prosecution is want of probable cause *and* malice: *Miller v. Pennsylvania Railroad Company*, supra, p. 313. The plaintiff has the burden of proving want of probable cause. Probable cause is defined as ". . . a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense . . ." (p. 314).

We have examined this unconflicting and unimpeached testimony with care. The gathering up of the opened hatbox with its contents on the railroad platform was part of plaintiff's duty. He was also required to clean up, with his broom, the vomit spewed upon the platform. After performing these duties, apparently between 10:30 and 11:00 in the morning, plaintiff carried his dirty broom and hatbox from the platform down the steps and through the corridor or tunnel beneath the tracks. At the end of the tunnel, instead of turning to the left and handing the hatbox to those in charge of defendant's Lost and Found Department, plaintiff turned to the right and entered a locker room where cleaning supplies were kept and placed the hatbox on top of a locker in full view. The police officer observed plaintiff thus entering the locker room with the hatbox, followed and arrested him, and charged plaintiff with larceny. Plaintiff unavailingly explained that the reason he had gone into the locker room first instead of turning in the hatbox at the Lost and Found Department was that he did not think he could take the dirty broom into that department, and therefore decided to wait until he could wash it and also to take time out to eat a sandwich (not having eaten breakfast that morning).

These facts, as matter of law, were wholly insufficient to establish probable cause to warrant an arrest

for larceny. It was a most tenuous thread on which
to hang a charge of theft because an employe with a
theretofore unimpeachable record, in performing dut-
ies he was employed to do, turned to the right instead
of the left, after making a journey with the hatbox
in full view of passengers and employes in a busy
railroad station and without the slightest conceal-
ment. He placed the box on top of a locker in plain
view. He then gave the officer an account of why he
had postponed turning it in to the Lost and Found
Department. Under these circumstances the action of
defendant's police officer was with unwise haste and
exhibited a lack of deliberation or care. The arrest
and the handcuffing of plaintiff and carrying him off
to defendant's office for search and delivery to the
city police were without sufficient justification.

Since we hold as *matter of law* that the arrest was
without probable cause, the submission to the jury of
that question as a matter of fact has resulted in harm-
less error because the jury by its verdict reached the
same conclusion.

In order for plaintiff to recover he is required to
prove not only lack of probable cause, but the *exist-
ence of malice*: *Miller v. Pennsylvania Railroad Com-
pany*, supra, p. 316. The question of the existence of
malice is always a question of fact exclusively for the
jury: 34 Am. Jur. 794, sec. 160, and the cases therein
cited. Malice may be *inferred* from want of probable
cause: *Taubman v. Schulte, Inc.*, 302 Pa. 170, 153 A.
150; *Curley v. Automobile Finance Company*, 343 Pa.
280, 283, 23 A. 2d 48; *Heisey v. Vansant*, 126 Pa. Su-
perior Ct. 373, 375, 190 A. 726; *Hubert v. The Alta
Life Insurance Company*, 130 Pa. Superior Ct. 277,
196 A. 513. Legal malice is not limited to motives of
hatred or ill will, but may consist of defendant's reck-
less and oppressive disregard of plaintiff's rights: 34

Am. Jur. 794, sec. 160; 54 C. J. S. Malicious Prosecution sec. 42, and the many cases therein cited.

The presumption of malice because of lack of probable cause was not overcome by the evidence of the defendant. The police officer acted with undue haste and on insufficient grounds. Judge Bok accurately said in his opinion, sustaining the verdict: "As for malice, which the jury expressly found, . . . [p]laintiff had a good reputation after seven years employment. He was handcuffed and taken openly to headquarters, several miles away; there he was questioned for three hours and taken, with or without his permission, to the place where he lived. That place was searched for an hour, obviously not for the contents of the hatbox but just in case plaintiff had been stealing anything else, although the railroad had no other suspicions about him whatever. This pressure took place after the arrest, not before. Aside from the inference of malice that may be drawn from the lack of probable cause, if not rebutted (cf. the *Miller* and *Simpson* cases, supra), it is clear, reading through the jury's eyes, that there was factual evidence of malice; the quick arrest, the public handcuffing, the long interrogation, the effort to get plaintiff's written permission to search his house and then going without it, the search of the house for stolen property—both the public's and the railroad's—without any more to go on than the suspicion arising from the hatbox. This appears ample to support the verdict."

The judgment is affirmed.

---

Dissenting Opinion by Mr. Justice Bell:

The majority opinion states that except for minor conflicts or discrepancies, the evidence in this case was "unconflicting and unimpeached"; and on this

unconflicting and unimpeached testimony the majority decides as a matter of law, under *Miller v. Pennsylvania Railroad Company*, 371 Pa. 308, 89 A. 2d 809, that the plaintiff proved lack of probable cause. The majority has given lip service to this leading case but in my judgment has misapplied and emasculated the principles established or reiterated in that case to such an extent as to make it meaningless.

Malicious prosecutions are not favored by the law: *Miller v. P.R.R.*, 371 Pa., supra.

The question in this class of case is not whether the plaintiff is innocent or guilty, but whether an ordinarily prudent man had reasonable grounds for believing plaintiff was guilty of that crime for which he was arrested. "Probable cause does not depend on the state of the case in point of fact *but upon the honest and reasonable belief of the party prosecuting.*"*: *Miller v. P.R.R.*, 371 Pa., supra. *"The question of probable cause is to be determined in the light of those facts which the accuser knows or reasonably believes to exist at the time when he acts. . . ."*: Restatement, Torts, §662, Comment f.

Defendant's officer was sitting on a bootblack stand in a corridor in defendant's North Philadelphia Station, getting his shoes shined. The corridor ran east and west. The officer saw plaintiff, who was a station cleaner of the defendant, walk by the bootblack stand with a pan and brush in one hand and a hat box in his other hand. There had been numerous thefts of passengers' baggage within two or three months prior to this incident. Plaintiff, instead of turning to his left on entering the east-west corridor and taking the hat box to the "Lost and Found" storeroom which was 25 feet away, turned to the right and walked to the

---

* Italics throughout, ours.

cleaners' room which was 70 feet away on a so-called "baggage corridor" off the east-west corridor.

To sustain plaintiff's burden of proving that probable cause *did not exist,* the majority quotes from *a summary* of the testimony by the trial judge; quotations from *"the testimony itself"* will demonstrate the utter untenability of the majority's opinion. The testimony upon which the majority must rely and which they say is uncontradicted and unimpeached and unconflicting, is as follows:

Defendant's officer testified: "A. This morning that this thing happened, on July 9, 1948, I was getting my shoes cleaned, it was full of mud at the time and I was getting them cleaned. I was sitting there in the bootblack stand. All of a sudden I see this cleaner going along with a pan and brush in his hand and this hat box in the other hand. So I said to the bootblack, 'Hurry up, clean me off'. Mr. Levy: Objected to and I ask that be stricken. The Court: Strike it. A. I got off the bootblack stand, went to this cleaner's room, *I tried the door and the door was locked. I knocked on the door. No answer come.* I walked over to the wall and I stood across *the wall and waited for him to come out.* He come out with his pan and brush out of this door. I says, 'Where is that hat box you brought in there?' I showed him who I was, I showed him my badge. He says, 'In here.' I went in, I looked around and seen it on top of these lockers. It was in a drip pan that size (indicating) and you could just see about that much of the hat box out (indicating). Q. You are indicating about six inches?

"A. Yes. He reached up and got it and I said, 'Come on in here to the lost and found.' So we opened it up. It had a lot of clean clothes in it. . . .

"A. So we take him in the baggage room, we looked in this hat box, I found an address in there. So I

says, 'All right. Why didn't you turn it in to the lost and found instead of taking it over here to the cleaner's room? It's closer to go to the baggage room and lost and found.' He said, 'I'm eating a sandwich.' I said, *'You ain't eating nothing.' I waited five minutes and he didn't eat nothing.* Only thing laying on the table was two rolls of toilet paper, only thing I seen on the table there, just a little bit of a table, a little bigger than this (indicating a stenographer's table). I said, 'All right, come to the office.' On account of being an employee I took him to the office. So then I took him, we went out to this house, *he took us out to a wrong address, he didn't live there at all,* he lived somewhere else. He took us to his brother's house, . . ."

Anyone familiar with the habits of criminals knows that they resort to lies, especially if they are arrested near the scene of the crime or caught with the "goods on" them. This is fortunate for the law abiding public, because otherwise few criminals would ever be convicted. This plaintiff acted exactly as a person would who was guilty of theft. Instead of taking the hat box to the "Lost and Found" which was 25 feet away, he turned the other way and took it to the cleaners' room, which was 70 feet away. The door to the cleaners' room was locked. When the officer knocked on the door plaintiff made no answer. Moreover, when plaintiff finally did come out of the cleaners' room he came out with his pan and brush *but not with the hat box.* Are those the actions of an honest man or aren't they typical actions of a thief? A person who has nothing to hide does not lock a door, and does not fail to answer a knock, and when he emerges from the cleaners' room does not leave the lost or stolen property in the cleaners' room instead of taking it to the "Lost and Found" room. When asked why he did not turn the hat box into the lost and found, plaintiff

said, "I am eating a sandwich." To this obvious lie, the officer replied, "You ain't eating nothing." Moreover, there was no sandwich and no evidence of a sandwich there, nothing but two rolls of toilet paper on the table. The clothes in the hat box were "just jumbled around"; the box was not even on the table but was on top of the lockers. How can it be said by practical men that the aforesaid evidence did not indicate guilt but on the contrary was sufficient to prove that defendant lacked reasonable grounds to believe Hugee was attempting to steal the hat box and its contents.

Thereafter plaintiff confirmed the suspicions of guilt which any reasonable man under the aforesaid circumstances would have had, by taking the officer not to his home but to a wrong address. What more could a guilty man do to evidence his guilt, except to confess it?

The majority opinion states that "the action of defendant's police officer was with unwise haste and exhibited a lack of deliberation or care." According to plaintiff's contentions, and it would likewise appear from the majority opinion or from questions from the bench during oral argument, it is no longer safe or wise to catch a thief with the goods on him; a new test is devised for the protection of society, viz., an officer before making an arrest must return to plaintiff's place of employment, look up his prior record for good behavior or crime, give him a chance to get rid of the "hot" goods, then obtain a search warrant and thereafter, if the facts warrant, arrest him. The "realities" of life make it necessary to once again state that "law abiding people" as well as criminals have some rights and need some protection.

In *Miller v. P.R.R.*, 371 Pa., supra, at page 314, the Court said: ". . . Probable cause has been defined as

a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense: Altman v. Standard Refrigerator Company, Inc., 315 Pa. 465, 173 A. 411. . . ."

To anyone who has had any practical dealings with criminals, it seems clear that defendant had reasonable grounds for suspicion which were supported by circumstances sufficient to warrant an ordinarily prudent man in the same situation, viz., the situation of the officer making the arrest, in believing that the cleaner was committing a theft or fraudulent conversion. *This was likewise the opinion of the committing Magistrate (who was then a lawyer and is now a Judge), and also of the Grand Jury, and also of the very able trial Judge, Eugene V. Alessandroni.* After the jury returned a verdict of "not guilty" the trial Judge had Hugee, who is the present plaintiff, stand at the bar of the Court and said: "The Court: You have every reason to feel grateful to your attorney and the jury. *If I was on the jury, I would have found you guilty. . . ."*

In *Miller v. P.R.R.,* 371 Pa., supra, where this Court reversed the judgment of the Court below, and entered judgment for defendant non obstante veredicto, this Court said (page 317): "It is to be noted that plaintiff was held for court by a justice of the peace and indicted by a grand jury. It is everywhere held that the actions of each of these judicial bodies are affirmative evidence of probable cause: Restatement, Torts, §§663(2) and 664(2). No suggestion has been made that either the justice of the peace or the grand jury was imposed upon in any way or that the evidence was distorted in presentation to them. What appeared to each of them to be probable cause for prosecution may well have appeared in the same light

to the defendant railroad." The instant case is much stronger for the prosecution because Judge Alessandroni also believed plaintiff was guilty. How then is it possible to say, without ignoring or distorting all our prior decisions, that defendant's officer, acting as a reasonable man and on the basis of the facts as they appeared to him at the time, lacked reasonable grounds to believe the cleaner was trying to steal the hat box and its contents.

Plaintiff also has the burden of proving malice. Plaintiff admitted that he never had any dealings with the defendant's officers and so far as he knew they had nothing against him. Where is the malice?

In *Miller v. P.R.R.*, 371 Pa., supra, the Court said (page 316) : "It is highly significant that no attempt is made to show malice except by inference because of alleged lack of probable cause. It is true that such an inference of the existence of malice is permissible, but it has rarely been sufficient unaided by some show-ing of private motive, . . . Plaintiff in the present case introduced no evidence at all to prove malice or to overcome the defendant's evidence that this prosecution was part of a bona fide effort by the railroad po-lice to protect the railroad property from further de-predations by bringing the offenders to justice."

Where probable cause exists, malice, even though it also existed, is immaterial: *Miller v. P.R.R.*, 371 Pa., supra; *Werner v. Bowers*, 318 Pa. 518, 178 A. 831; *McCoy v. Kalbach*, 242 Pa. 123, 88 A. 879; *Dietz v. Langfitt*, 63 Pa. 234; *McClafferty v. Philp*, 151 Pa. 86, 24 A. 1042; *Lipowicz v. Jervis*, 209 Pa. 315, 58 A. 619. Since probable cause existed for the arrest, it is un-necessary to further discuss malice.

I would reverse and here enter judgment non ob-stante veredicto.