

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2005

# Mitchell v. Guzick

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3824

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mitchell v. Guzick" (2005). *2005 Decisions.* Paper 867.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/867

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-3824

———

JOSEPH MITCHELL,
Appellant

v.

LORI GUZICK;
RICHARD WIEST;
JOSEPH O'DONNELL

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 02-cv-00178)
District Judge: Honorable Christopher C. Conner

———

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2005

Before: SLOVITER and McKEE, Circuit Judges, and FULLAM, District Judge[*]

(Filed:    July 12, 2005)

———

OPINION

———

_____

[*]  Hon. John P. Fullam, Senior Judge, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Joseph Mitchell appeals from the orders of the United States District Court for the Middle District of Pennsylvania entering summary judgment in favor of Lori Guzick, Richard Wiest, and Joseph O'Donnell (hereinafter collectively "Defendants") on Mitchell's claims for malicious prosecution, abuse of process, and civil conspiracy. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332; this court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons explained below, we will affirm.

## I.

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to our disposition.[1] On February 14, 1997, Karen L. Mitchell instituted divorce proceedings against Mitchell. App. at 98.[2] Guzick, an attorney with the firm of Williamson, Friedberg & Jones, LLC, represented Mrs. Mitchell in this action. Unfortunately, the Mitchells' divorce was highly contentious.

Several months after Mrs. Mitchell filed for divorce, the Commonwealth charged

---

[1] Of course, in reviewing a grant of summary judgment, we must view "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," here Mitchell. Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

[2] All citations to "App." denote the appendix filed by Appellant; all citations to "Supp. App." refer to the appendix filed by Appellees.

2

Mitchell with burglarizing Mrs. Mitchell's apartment. Corporal O'Donnell[3] had limited involvement with this case, and merely sat in on another officer's interrogation of Mitchell, as he was not the primary law enforcement officer assigned to the matter and acted merely as a supervisor. Eventually, upon the advice of counsel, Mitchell made restitution to Mrs. Mitchell and, as a result, the charges against him were dropped in late 1997 or early 1998.

In December 1997, Mitchell was charged with another crime. According to O'Donnell, on December 16, 1997, Mitchell stopped his car in the middle of a busy intersection, approached O'Donnell while he was on foot patrol, yelled at him, and ignored repeated orders to leave the scene. In January 1998, a state magistrate judge found Mitchell guilty of disorderly conduct; apparently, Mitchell did not appeal this determination.

In November 1998, Mitchell began sending letters to Guzick, eventually totaling at least thirteen letters. Guzick, alarmed by the number and content of these letters, spoke with the police. Initially, Corporal O'Donnell, after meeting with Guzick and reviewing the letters, advised her "that the letters were open to various interpretations," App. at 272, and thus did not take action at that time.

Mitchell continued to send letters to Guzick. As a result, sometime in early 1999,

_____

[3] Subsequent to the facts giving rise to this action, Corporal O'Donnell retired from the Pottsville, Pennsylvania police force.

O'Donnell spoke with Gino Dinicola, the attorney who was representing Mitchell in the divorce proceedings, and asked Dinicola to tell his client to stop sending letters to Guzick. Dinicola promised to relay the request; the letters, however, continued. Meanwhile, in March 1999, the Mitchells' divorce became final.

At some point in June 1999, Mitchell entered the offices of Williamson, Friedberg & Jones, LLC and asked to speak with Guzick. He was advised that Guzick was not in the office at that time. Apparently, Mitchell then expressed his frustration with Guzick in general and her conduct during the divorce proceedings in particular. Wiest, a partner at Williamson, Friedberg & Jones, LLC, told Mitchell that he would discuss Mitchell's concerns with Guzick. Wiest and Guzick thereafter contacted the police; the police, however, took no action at that time.

On October 20, 1999, Mitchell again entered the law firm's offices and asked to see Guzick. He left after Guzick's colleagues told him that she was unavailable. As a result of this visit, Wiest sent a letter to Mitchell dated October 22, 1999, informing him that his "physical presence on [the firm's] property [was] not welcome." Supp. App. at 244.

After Mitchell received this letter, he spoke on the telephone with Wiest. According to Wiest, during this conversation, Mitchell said: "I am going to [expletive] kill you." App. at 226. Thereafter, on November 4, 1999, the Commonwealth charged Mitchell with harassment, stalking, and making terroristic threats. Following a trial in

4

January 2001, a jury acquitted Mitchell on all charges.

On February 4, 2002, Mitchell filed a Complaint in the District Court. Relying, alternatively, on 42 U.S.C. § 1983 and Pennsylvania law, the Complaint contained: Count I, a federal-law based count of malicious prosecution and abuse of process against Guzick, Wiest, and O'Donnell; and, Count II, a state-law based count of malicious prosecution and abuse of process against those individuals. In addition, the Complaint averred that Defendants had conspired against him to commit those torts. The gravamen of the Complaint was that Wiest and Guzick had conspired with O'Donnell to file, prosecute, and manipulate the various charges for the purposes of extorting money, coercing a favorable result for Mrs. Mitchell in the divorce proceeding, and otherwise harassing and annoying Mitchell.

The District Court entered summary judgment in Defendants' favor on Mitchell's § 1983 claims, but continued to exercise jurisdiction over Mitchell's state law claims. Thereafter, the Court entered summary judgment in Defendants' favor on those claims as well. This appeal followed.

## II.

We review a grant of summary judgment de novo, applying the same standard as did the district court. Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002). Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of

law.  See Fed. R. Civ. P. 56.  As noted above, Mitchell's Complaint contained allegations of (1) malicious prosecution; (2) abuse of process; and (3) conspiracy – allegations which we address seriatim.[4]

### III.

To prevail on a malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty as a consequence of the criminal proceeding.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  In order to prevail on a Pennsylvania common law action for malicious prosecution, a plaintiff must prove: (1) that the defendants instituted proceedings without probable cause;  (2) that the defendants acted with malice; and (3) that the proceedings were terminated in favor of the plaintiff.  Hugee v. Pa. R.R. Co., 101 A.2d 740, 742 (Pa. 1954).

There are three prosecutions here at issue: the burglary prosecution; the disorderly conduct prosecution; and the harassment, stalking, and terroristic threats prosecution.

---

[4]  Citing Fed. R. App. P. 28(a)(5), Defendant O'Donnell contends that, aside from the continuing violations theory, Mitchell has failed to preserve any issues on appeal against him.  Although we agree with O'Donnell that Mitchell's brief is lacking in this regard, we believe that his brief has sufficiently preserved the issues and thus address the correctness of the District Court's summary judgment orders.

6

Upon our de novo review, we agree with the District Court's conclusion that Mitchell has not shown any evidence to support his allegations of malicious prosecution with respect to any of these three prosecutions.

Specifically, neither the disorderly conduct prosecution nor the burglary prosecution ended or terminated in Mitchell's favor. Marasco, 318 F.3d at 521; Hugee, 101 A.2d at 742. Most obviously, a state magistrate judge found Mitchell guilty of the disorderly conduct charge – a termination clearly not in Mitchell's favor. Furthermore, by way of a compromise entered into in order to avoid a conviction, Mitchell paid his ex-wife restitution for items allegedly stolen during the burglary. Thus, that prosecution likewise did not terminate in Mitchell's favor. See Hilfirty v. Shipman, 91 F.3d 573, 580 (3d Cir. 1996) ("[A] prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim."); Alianell v. Hoffman, 176 A. 207, 208 (Pa. 1935) ("Where the termination of a criminal prosecution . . . has been brought about . . . by compromise and settlement, an action for malicious prosecution cannot be maintained.") (internal citation and quotations omitted).

On the other hand, a jury acquitted Mitchell of the harassment, stalking, and terroristic threats charges; thus, that prosecution was indeed terminated in his favor. The District Court, however, found that the harassment, stalking, and terroristic threats prosecution was instituted with probable cause and, therefore, held that Mitchell's

7

malicious prosecution claim based thereon was untenable.

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). This standard is meant to "'safeguard citizens from rash and unreasonable interferences with privacy'" while simultaneously providing "leeway for enforcing the law in the community's protection." Pugh, 420 U.S. at 112 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). This court has stated that it must look at the "totality of the circumstances" and use a "common sense" approach in assessing the issue of probable cause. United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984). Moreover, and contrary to Mitchell's argument, the absence of probable cause "is not conclusively established by an adjudication of innocence in the [criminal] proceeding." Wainauskis v. Howard Johnson Co., 488 A.2d 1117, 1122 (Pa. Super. Ct. 1985) (internal quotations and citation omitted).[5]

Here, the record shows unequivocally that Mitchell sent a series of letters to Guzick and continued to do so after being asked to stop; this conduct provided probable

---

[5] Under both § 1983 and Pennsylvania law, the existence or nonexistence of probable cause is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (internal citation and quotations omitted); see also Wainauskis, 488 A.2d at 1122.

8

cause for a harassment charge. 18 Pa. Con. Stat. § 2709(a). Similarly, the record shows conclusively that Mitchell entered Guzick and Wiest's law firm after being told he was not welcome; this conduct provided probable cause for a stalking prosecution. 18 Pa. Con. Stat. § 2709.1(a). Finally, Mitchell purportedly threatened to kill Wiest, an allegation fully supportive of a prosecution for making terroristic threats. 18 Pa. Con. Stat. § 2706.

Whether Mitchell actually made such a threat is immaterial; similarly, the fact that the jury acquitted him of the charges is not dispositive. Wainauskis, 488 A.2d at 1123. Mitchell has presented no evidence that shows, or even suggests, that O'Donnell or anyone else with the Commonwealth had reason to disbelieve Wiest or the other witnesses. On the facts presented, a prudent officer could reasonably have believed that Mitchell had committed the offenses. Pugh, 420 U.S. at 111. We will therefore affirm the District Court's dismissal of Mitchell's malicious prosecution claims.

## IV.

Turning to Mitchell's remaining claims, we note that 42 U.S.C. § 1983 does not itself contain a limitations period. In Wilson v. Garcia, 471 U.S. 260 (1985), the Supreme Court of the United States held that because claims under § 1983 are, in essence, claims for personal injury, the several states' statutes of limitations applicable to personal injury claims control actions under § 1983. 471 U.S. at 276.

Pennsylvania law provides a two-year statute of limitations period for personal

9

injury actions. 42 Pa. Cons. Stat. § 5524. Thus, because it is a personal injury action, Mitchell's state-law based abuse of process claim is governed by 42 Pa. Cons. Stat. § 5524. Moreover, under Garcia, Mitchell's federal § 1983 abuse of process claim is also governed by this two-year statute of limitations period. 471 U.S. at 276; see also Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989) ("Pennsylvania's two-year limitations period for personal injury actions is applicable in [§] 1983 actions.").

Mitchell contends that Defendant O'Donnell, acting in concert with Defendants Wiest and Guzick, perverted the burglary and disorderly conduct prosecutions in such a manner as to provide his ex-wife with leverage against him in the then-pending divorce action. The burglary charge was brought in May 1997 and resolved in late 1997 or early 1998; the disorderly conduct charge was instituted in December 1997 and resolved in January 1998. In Rose, we noted that an abuse of process claim accrues when the plaintiff first discovers his or her injury – typically the date that the plaintiff is arrested or the untoward threats are made. Rose, 871 F.2d at 350-52. It is clear, therefore, that Mitchell's Complaint, filed February 4, 2002, is time barred insofar as it alleges abuse of process as to those prosecutions.[6] Indeed, even assuming arguendo that the cause of action did not accrue until Spring 1999, when the purportedly conspiracy-laced divorce

---

[6] We note in passing (as did the District Court) that this time bar provides an additional basis for dismissal of Mitchell's malicious prosecution claims insofar as such claims rely on the two 1997 arrests.

10

proceedings between Mitchell and his ex-wife concluded, it is apparent that Mitchell's abuse of process claims are time barred as to the two 1997 arrests.[7]

In contrast, Mitchell's claim for abuse of process stemming from his prosecution for harassment, stalking, and terroristic threats is potentially actionable. That prosecution was instituted in November 1999 and was terminated by way of a jury's verdict in January 2001. Unlike malicious prosecution, which is illegitimate from its inception, an abuse of process occurs when a "prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977); see also McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) ("Malicious [prosecution] . . . has to do with the wrongful initiation of . . . [the legal] process, while abuse of civil process is concerned with a perversion of a process after it is

_____

[7] By way of a single and conclusory sentence in his brief, Mitchell attempts to avoid this time bar by referencing the "continuing violations" doctrine. Appellant's Br. at 10-11. The continuing violations doctrine "is an equitable exception to the timely filing requirement" and holds that "when a defendant's conduct is part of a continuing practice, [a legal] action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) (internal citation and quotations omitted). As discussed more fully in the above text, Mitchell was prosecuted again from November 1999 to January 2001 – dates within the limitations period – for harassment, stalking, and terrorist threats. The later prosecution, however, is not so interrelated with the 1997 charges as to constitute a continuing practice and, therefore, Mitchell's anemic citation to the continuing violations doctrine is unavailing.

11

issued."). To establish a claim for abuse of process, a plaintiff must show evidence of an act or threat not authorized by the process or aimed at an illegitimate objective. Bristow v. Clevenger, 80 F. Supp. 2d 421, 430-31 (M.D. Pa. 2000); McGee, 535 A.2d at 1023.

The record in this case contains no evidence that Mitchell's prosecution for harassment, stalking, and terroristic threats was perverted in any manner to achieve an illegitimate end. Mitchell's divorce proceedings had terminated several months prior to November 1999; thus, there can be no inference that the prosecution provided Guzick and Wiest, as Mrs. Mitchell's lawyers, with any leverage in those proceedings. Nor does the record support a finding that Defendants used the harassment, stalking, and terroristic threats prosecution to blackmail or otherwise abuse Mitchell. We will, therefore, affirm the District Court's dismissal of Mitchell's abuse of process claims.[8]

## V.

For the above stated reasons, we will affirm the order of the District Court.

---

[8] Because Mitchell has not shown any underlying violation of his rights, we will also affirm the District Court's dismissal of his allegations of conspiracy. Similarly, because Mitchell failed to show any deprivation of his rights, we need not decide whether Guzick or Wiest (lawyers in a private law firm) acted "under color of law" for purposes of a § 1983 action.